The STATE of Ohio, Appellee,

v.

KUCZAK, Appellant.

[Cite as *State v. Kuczak* (2000), 139 Ohio App.3d 468.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 18266.

Decided Oct. 13, 2000.

*Mathias H. Heck, Jr.,* Montgomery County Prosecuting Attorney, and *Raymond J. Dundes,* Assistant Prosecuting Attorney, for appellee.

*Konrad Kuczak, pro se.*

GRADY, Presiding Judge.

Konrad Kuczak appeals from his conviction for unsafe operation of an aircraft, in violation of R.C. 4561.15.

On June 11, 1999, Kuczak and his wife, Patricia, both instrument-rated, multi-engine pilots with twenty-five years of flight experience, took off in their airplane from Dayton Wright Brothers Airport at about 5:30 p.m. Mrs. Kuczak piloted the plane to Athens, Ohio, where they attended a ceremony and reception. The Kuczaks left Athens at approximately 10:15 p.m. to fly back to Wright Brothers Airport, where they keep their plane. Mr. Kuczak flew the return leg of the trip.

Wright Brothers Airport is a small airport with a single, mile-long runway. It is used mainly for corporate and recreational flying. Wright Brothers Airport is an uncontrolled airport: it has no control tower to regulate air traffic. Thus, a pilot intending to use the airport must communicate with FAA air traffic

controllers for approach instructions rather than an air traffic controller on site. A pilot is on his own when it comes to the actual landing of the plane.

As the plane approached the vicinity of Xenia, Ohio, Kuczak was informed by the Dayton Approach air traffic controller that there was a NOTAM issued for runway closing and painting at Wright Brothers Airport. A "NOTAM," short for "Notice to Airmen," is an advisory issued in the event of a potential problem for air traffic. The time on the NOTAM for the runway closure was 21:00 eastern standard time. Kuczak and his wife had departed from Wright Brothers Airport at approximately 5:30 p.m., which is 21:30 GMT/CUT or "Zulu" time.

Kuczak was skeptical of the NOTAM because he and his wife had departed from Wright Brothers Airport *after* the announced closure time. The air traffic controller attempted to contact someone at Wright Brothers Airport to check the authenticity of the NOTAM, but was unsuccessful. The air traffic controller at Dayton Approach gave Kuczak clearance to approach Wright Brothers Airport. Kuczak informed the air traffic controller that he planned first to do a "low approach" to see if the runway was closed and if it was safe to land.

Kuczak made two low approaches, one in each direction, and did not see anything on the runway that would have confirmed that the runway was closed or that it was unsafe to land. However, a seven-person painting crew had in fact been working on the runway since 9:00 p.m., under the belief that the runway was closed. When the crew members saw Kuczak's plane approach, and his two low approaches, it became apparent to them that Kuczak planned to land the plane. To avoid any danger, the crew members hurriedly pulled their equipment off the runway. Kuczak landed the airplane safely.

Five months later, on November 10, 1999, Kuczak was charged in the Municipal Court of Miamisburg with a violation of R.C. 4561.15(A)(2), which states: "No person shall * * * [o]perate an aircraft on the land or water or in the air space over this state in a careless or reckless manner that endangers any person or property, or with willful or wanton disregard for the rights or safety of others." The complaint was signed by Lt. Robert E. Stanton of the Ohio State Highway Patrol. The case was voluntarily dismissed by a prosecutor on January 3, 2000, and an identical complaint was filed the following day. The case was scheduled for trial on February 11, 2000.

Counsel for Kuczak filed a motion to dismiss pursuant to Crim.R. 12(B)(1) for defective institution of the prosecution. He argued that, pursuant to R.C. 4561.05, the action must be brought on behalf of the state by the Ohio Department of Transportation, which was not a party. The trial court denied the motion. Defense counsel also moved to dismiss when it became apparent that Lt. Stanton would not appear at trial. The ruling on this motion was deferred and a bench trial went forward. At the close of the state's evidence, counsel for Kuczak

moved for a judgment of acquittal pursuant to Crim.R. 29(A). Both the Rule 29(A) motion for acquittal and the deferred motion to dismiss were denied.

After the trial, the matter was taken under advisement and, on April 10, 2000, the trial court put on an "Entry" finding Kuczak guilty and imposing a $400 fine plus court costs. Kuczak filed a timely notice of appeal. He presents six assignments of error:

### FIRST ASSIGNMENT OF ERROR

"The trial court committed prejudicial error by refusing to grant appellant's motion to compel discovery."

### SECOND ASSIGNMENT OF ERROR

"The trial court committed prejudicial error by overruling the appellant's motion to dismiss."

### THIRD ASSIGNMENT OF ERROR

"The trial court committed prejudicial error by refusing to apply federal regulations and standards."

### FOURTH ASSIGNMENT OF ERROR

"The trial court committed prejudicial error by failing to find appellant guilty of violating any statute beyond a reasonable doubt."

### FIFTH ASSIGNMENT OF ERROR

"The trial court erred in overruling the appellant's Rule 29 motion at the close of the state's case."

### SIXTH ASSIGNMENT OF ERROR

"The trial court committed prejudicial error in finding the appellant guilty absent proof of all the elements of the crime beyond a reasonable doubt."

Kuczak's second assignment of error alleges that the trial court erred in refusing to grant his motion to dismiss pursuant to Crim.R. 12(B)(1), on what he perceives to be a defect in the institution of the prosecution. Kuczak rested this motion on, among other things, the fact that the Department of Transportation did not participate in this proceeding.

Kuczak was charged with a violation of R.C. 4561.15, unsafe operation of an aircraft. R.C. 4561.05 states that "[t]he department of transportation shall

administer and enforce R.C. 4561.01 to 4561.151 of the Revised Code." Further, R.C. 4561.06 plainly states that "[t]he department shall be the official representative of this state in all actions, matters, or proceedings pertaining to aviation in which this state is a party or has an interest."

R.C. 4561.13 instructs that "[e]very state, county, and municipal officer charged with the enforcement of state or municipal laws shall aid the department of transportation in the enforcement of R.C. 4561.01 to R.C. 4561.151." R.C. 4561.06 further requires the Department of Transportation to report probable violations of R.C. 4561.15 and federal aviation laws to the proper governmental authorities. *State v. Collins* (1984), 18 Ohio App.3d 72, 18 OBR 237, 480 N.E.2d 1132.

On the record before us, we find that the court erred in denying Kuczak's motion to dismiss for improper institution of the prosecution. While there is, unfortunately, a dearth of Ohio case law on point, the plain language of the statute shows the intent of the General Assembly to make the Department of Transportation the exclusive representative of the state of Ohio in prosecutions alleging unsafe operation of an aircraft in violation of R.C. 4561.15.

■ When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for a court to apply the rules of statutory interpretation. *Symmes Twp. Bd. of Trustees v. Smyth* (2000), 87 Ohio St.3d 549, 721 N.E.2d 1057. No ambiguity is present here.

First, R.C. 4561.05 mandates that the Department of Transportation "shall administer and enforce" R.C. 4561.15. This leaves little room for interpretation.

Second, R.C. 4561.06 plainly states that "the department shall be the official representative of the state" in "all actions, matters, or proceedings pertaining to aviation" in which the state is a party. This section reposes on the Department of Transportation primary authority to institute an action concerning aviation on behalf of the state.

Finally, R.C. 4561.13 imposes a duty on state, county, and municipal officers "charged with the enforcement of state or municipal laws" to "aid" the Department of Transportation in enforcement of this section. This demonstrates the intent to place local officials in a position subordinate to the Department of Transportation in this type of proceeding.

■ For the foregoing reasons, we find that in any enforcement of R.C. 4561.15, the Department of Transportation must act as the official representative of the state. In the matter before us, the record fails to reflect that the department of Transportation, or the Department's legal representative, the Attorney General of Ohio, was involved in the proceedings at all. Thus, Kuczak's

motion to dismiss based on improper institution of the prosecution should have been granted. The trial court erred when it denied the motion.

Our holding does not diminish the power of local prosecutors to prosecute violations of state laws that occur within their jurisdiction. R.C. 2938.13. However, we believe that the General Assembly carved out an exception to that power for violations of R.C. 4561.15 and related sections because matters involving aviation are complex and their enforcement implicate the specific requirements of federal regulations, which the trial court here expressly declined to consider.

Kuczak's second assignment of error is sustained.

### Conclusion

Having sustained the second assignment of error, all other assignments are rendered moot, and we decline to decide them. App.R. 12(A)(1)(c). We reverse the judgment from which this appeal was taken and vacate Kuczak's conviction.

*Judgment reversed.*

BROGAN and FREDERICK N. YOUNG, JJ., concur.