Christopher Scott HUGHES and Thomas Porter Cloyd, Petitioners,

v.

**THE ELEVENTH JUDICIAL CIRCUIT OF FLORIDA, the Honorable Joseph P. Farina, in his capacity as Chief Judge of The Eleventh Judicial Circuit of Florida, The Honorable David H. Young, in his capacity as a Judge on The Eleventh Judicial Circuit of Florida, and Charlie Crist, Attorney General of the State of Florida, Respondents.**

No. 03–21300–CIV.

United States District Court, S.D. Florida.

Aug. 5, 2003.

Jeffrey L. Freeman, Esq., Counsel for Petitioner Hughes, North Miami.

James K. Rubin, Esq., Counsel for Petitioner Hughes, North Miami Beach.

William M. Pearson, Esq., H. Eugene Lindsey, Esq., Beatrice Butchko, Esq., Counsel for Petitioner Cloyd, Ferrell Schultz Carter Zumpano & Fertel, PA, Miami.

Richard L. Polin, Esq., Counsel for Respondents, Office of the Attorney General, Miami.

Katherine Fernandez Rundle, Miami–Dade State Attorney, c/o Ron Ramsingh, Miami.

Hon. Joseph P. Farina, Miami.

Hon. David H. Young, Miami.

## ORDER GRANTING CHRISTOPHER SCOTT HUGHES AND THOMAS PORTER CLOYD'S PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254

SEITZ, District Judge.

THIS MATTER is before the Court on the Petition for Writ of Habeas Corpus of Petitioners Christopher Scott Hughes ("Hughes") and Thomas Porter Cloyd ("Cloyd") pursuant to 28 U.S.C. § 2254. Hughes and Cloyd, both former pilots for America West Airlines, seek to enjoin the

State of Florida from criminally prosecuting them for operating a commercial aircraft while under the influence of alcohol. Hughes and Cloyd contend that federal law exclusively governs their actions as federally certified commercial airline pilots and preempts the state criminal laws under which the State seeks to prosecute them. The Attorney General of Florida, on behalf of the Respondents, maintains that the State has concurrent power to prosecute federally certified commercial airline pilots for operating an aircraft while under the influence of alcohol.

As the state trial has not yet begun, the first issue is whether the Court may properly intervene at this early stage of the state criminal proceedings, or whether abstention is required. Second, if abstention is not required, the Court must determine whether Hughes and Cloyd have met the statutory requirements for pretrial habeas relief by demonstrating that the State Courts' denial of their motion to dismiss the state charges on federal preemption grounds was contrary to, or involved an unreasonable application of clearly established federal law. In order to address both of these issues, the Court must determine whether federal law governing pilot qualifications and capacity to operate commercial aircraft in interstate commerce preempts the state criminal laws under which the State seeks to prosecute Hughes and Cloyd. Consideration of these issues requires recognition of the federal government's interests in maintaining and enforcing uniform, nationwide standards regulating the behavior of commercial airline pilots, and the State's interests in enforcing its criminal laws to protect the safety and welfare of its citizens.

Having considered Hughes and Cloyd's Petition for Writ of Habeas Corpus, Respondents' Response, the Reply thereto, Respondents' Supplemental Response and Supplemental Authorities, and having heard oral argument on this matter, the Court holds that federal law governing pilot qualifications and capacity to operate commercial aircraft in interstate commerce preempts the state criminal laws under which the State seeks to prosecute Hughes and Cloyd through both field and express preemption. Because preemption is readily apparent, the Court must not abstain from intervening in the state criminal proceedings. Additionally, Hughes and Cloyd have demonstrated that the State Courts unreasonably applied clearly established federal law to the facts in this case. Thus, the Court must grant the petition, order the State Courts to discharge Hughes and Cloyd from the State's custody, quash the state criminal proceedings, and enjoin the State from taking any further criminal action against Hughes and Cloyd for the actions described in *State of Florida v. Christopher Scott Hughes and Thomas Porter Cloyd*, Case No. F02–019207B.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 1, 2002, First Officer Hughes and Captain Cloyd, both federally certified airmen at the time, boarded America West Airlines Flight 566 in preparation for a commercial flight from Miami, Florida to Phoenix, Arizona. Shortly after Flight 566 pushed back from the gate at Miami International Airport with Hughes and Cloyd at the controls, officers from the Miami–Dade County Police Department contacted the Transportation Security Administration and asked for permission to recall Flight 566 based upon tips from officials at the security checkpoint that the pilots smelled of alcohol. After the Transportation Security Administration granted permission and air traffic control recalled the plane to the gate, Miami–Dade police officers interviewed the pilots.

Approximately two hours later, Miami–Dade police took Hughes and Cloyd to the station and administered breathalyzer

tests. The results of those tests revealed that both Hughes and Cloyd had breath-alcohol levels exceeding the 0.08 limit under Florida criminal law, exceeding the 0.04 federal regulatory limit, but not exceeding the federal criminal limit of 0.10. As a result of the breathalyzer tests, America West permanently fired Hughes and Cloyd, and the Federal Aviation Administration ("FAA") permanently revoked their airmen and medical certificates.

Thereafter, on July 22, 2002, the State filed a two-count Information criminally charging Hughes and Cloyd with operating an aircraft while under the influence of alcohol in violation of Fla. Stat. §§ 316.193(1)(c)[1] and 860.13(1)(a).[2] Hughes and Cloyd pleaded "not guilty" to all state charges. The State Circuit Court Judge released both Hughes and Cloyd on bail pending trial which is presently set for October, 2003.

On September 4, 2002, Hughes and Cloyd moved to dismiss the state criminal charges, arguing that the State Circuit Court lacks subject matter jurisdiction over the acts alleged in the Information because federal law preempts state law in the area of pilot qualification and capacity to operate commercial aircraft in interstate commerce.[3] On October 23, 2002, the State Circuit Court conducted a hearing on Hughes and Cloyd's motion and denied their request to dismiss the Information without written opinion.[4] Thereafter, Hughes and Cloyd filed a Petition for Writ of Prohibition with the Third District Court of Appeal, challenging the State Circuit Court's ruling. On January 9, 2003, the Third District Court of Appeal held oral argument and denied Hughes and Cloyd's petition without opinion. The Third District Court of Appeal also considered Petitioners' motions for rehearing and written opinion, motion for certification of great public importance, and motion for rehearing en banc, and denied those motions without opinion.[5]

Having exhausted their state remedies, Hughes and Cloyd petitioned for a writ of

---

**1.** Fla. Stat. § 316.193(1)(c) provides:

(1) A person is guilty of the offense of driving under the influence and is subject to punishment as provided in subsection (2) if the person is driving or in actual physical control of a vehicle within this state and: ... (c) The person has a breath-alcohol level of 0.08 or more grams of alcohol per 210 liters of breath.
Fla. Stat. § 316.193(1)(c).

**2.** Fla. Stat. § 860.13(1)(a) provides:

(1) It shall be unlawful for any person:
(a) To operate an aircraft in the air or on the ground or water while under the influence of:
1. Alcoholic beverages....
Fla. Stat. § 860.13(1)(a).

**3.** On September 30, 2002, the State filed an Amended Information, adding one count of culpable negligence under Fla. Stat. § 784.05(1), which provides:

(1) Whoever, through culpable negligence, exposes another person to personal injury commits a misdemeanor of the second de-gree, punishable as provided in s. 775.082 or s. 775.083.
Fla. Stat. § 784.05(1).

**4.** At the conclusion of the October 23, 2002 hearing on *Hughes and Cloyd's motion to dismiss*, the State Court orally denied the motion as follows:

Listening to the arguments, reading the case and the supplemental authority, which counsel gave me last time, was interesting reading. Thank you, very much. I'm going to respectfully deny the motion to dismiss for lack of jurisdiction. Don't thin[k] it is applicable, in this case. The case law is pretty clear, around the country and even in our own federal circuit, giving us the authority in state court, here, in the State of Florida to prosecute these offenses.
Oct. 23, 2002 Tr. at 35.

**5.** As both of the Third District Court of Appeal's decisions were issued without opinion, those Orders stand as the Orders of the highest court in the State. *The Florida Star v. B.J.F.*, 530 So.2d 286, 288 (Fla.1988).

habeas corpus pursuant to 28 U.S.C. § 2254, asking this Court to discharge them from the State's custody, quash the state proceedings, and enjoin the State from taking any further action against them.[6] Hughes and Cloyd contend that federal habeas relief is appropriate for two reasons. First, they argue that they have satisfied the threshold requirements of 28 U.S.C. § 2254 because: (a) they are in custody pursuant to a state court judgment; and (b) they have exhausted their available state court remedies.[7] Second, Hughes and Cloyd also maintain that federal law preempts state law in the area of pilot qualification and capacity to operate

commercial aircraft in interstate commerce, and therefore, the State lacks jurisdiction to prosecute them.

Hughes and Cloyd premise their federal preemption arguments primarily on field preemption. Specifically, they argue that Congress has impliedly preempted the field of law governing the qualifications and capacity of pilots operating commercial aircraft in interstate commerce through the comprehensive scheme of federal regulations under 49 U.S.C. § 44701 et seq.,[8] and the federal criminal prohibitions against piloting a commercial aircraft while intoxicated pursuant to 18 U.S.C. §§ 341–343.[9] In the alternative, Hughes

---

**6.** As a preliminary matter, Respondents object to Hughes and Cloyd naming the individual State Court judges as Respondents in this matter. Hughes and Cloyd, however, assert that the individual judges are properly named in this matter, as they are the state officials who have direct control and authority over Hughes and Cloyd who are presently out on bail. *See* Fla. Stat. § 903.02 (providing that only the judge who imposed the conditions of bail or the chief judge of the circuit in which the defendant is to be tried may remove or alter a condition of bail). In light of Fla. Stat. § 903.02, the Court finds that the state trial judge and the chief judge of the circuit are properly named parties, as they have control over altering the conditions of bail imposed on Hughes and Cloyd.

**7.** The parties do not dispute that Hughes and Cloyd have met the threshold jurisdictional requirements for pursuing habeas relief under 28 U.S.C. § 2254. First, because Hughes and Cloyd have been released on bail pretrial with travel restrictions, they are "in custody" for purposes of 28 U.S.C. § 2254. *See Hensley v. Municipal Court, San Jose Milpitas Judicial District, Santa Clara County, Cal.,* 411 U.S. 345, 347–49, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973) (holding that a defendant released on bail or his own recognizance is "in custody" for purposes of 28 U.S.C. § 2254). Second, Hughes and Cloyd have exhausted their state court remedies, as both the state Circuit Court and the Third District Court of Appeals have considered and denied their request to dismiss the Information on federal preemption grounds. Accordingly, the Court has ju-

risdiction to consider Hughes and Cloyd's petition under 28 U.S.C. § 2254. Additionally, 28 U.S.C. § 2241(c) provides that "[t]he writ of habeas corpus shall not extend to a prisoner unless... (3) He is in custody in violation of the Constitution or laws or treaties of the United States...." 28 U.S.C. § 2241(c)(3). For the reasons stated herein, the Court concludes that habeas relief is appropriate, as Petitioners are in custody in violation of the Supremacy Clause in Article VI, clause 2 of the United States Constitution.

**8.** 49 U.S.C. § 44701(a) provides in relevant part:

(a) Promoting safety.—The Administrator of the Federal Aviation Administration shall promote safe flight of civil aircraft in air commerce by prescribing—...

(5) regulations and minimum standards for other practices, methods, and procedure the Administrator finds necessary for safety in air commerce and national security.

49 U.S.C. § 44701(a).

**9.** 18 U.S.C. §§ 341–343 provide:

§ 341. Definitions
As used in this chapter, the term "common carrier" means a locomotive, a rail carrier, a sleeping car carrier, a bus transporting passengers in interstate commerce, a water common carrier, and an air common carrier.
§ 342. Operation of a common carrier under the influence of alcohol or drugs
Whoever operates or directs the operation of a common carrier while under the influence

and Cloyd maintain that Congress has expressly preempted the same area of law under 14 C.F.R. Pt. 121, App. I, § XI.[10]

In response, Respondents make two main arguments. First, that pursuant to *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Court should abstain from interfering with the State Court criminal proceedings until those proceedings have been completed, i.e., until Hughes and Cloyd have been tried and found guilty. Second, that Petitioners have not demonstrated that the State Courts' refusal to dismiss the state prosecution on grounds of federal preemption were either contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d).[11]

## II. ABSTENTION

■ Federal courts must not interfere with pending state criminal proceedings in the absence of extraordinary circumstances demonstrating a great and immediate threat of irreparable injury. *Younger*, 401 U.S. at 46, 91 S.Ct. 746; *Kolski v. Watkins*, 544 F.2d 762, 764–65 (5th Cir. 1977).[12] This longstanding policy is grounded in two legal principles. The first "is the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger*, 401 U.S. at 43–44, 91 S.Ct. 746. The second is "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* at 44, 91 S.Ct. 746.

While *Younger* did not specify the types of "extraordinary circumstances" warranting federal intervention, it did suggest that extraordinary circumstances may arise

---

of alcohol...shall be imprisoned not more than fifteen years or fined under this title, or both.

§ 343. Presumptions
For purposes of this chapter—(1) an individual with a blood alcohol content of .10 percent or more shall be presumed to be under the influence of alcohol....
18 U.S.C. §§ 341–343.

**10.** Hughes and Cloyd also argue that Congress has expressly preempted the field of law governing the qualifications and capacity of commercial pilots under 49 U.S.C. § 41713(b)(1), which provides:

> Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1). The Court finds this argument to be without merit because a

"law related to a...service" clearly does not govern the qualifications and capacity of interstate commercial airline pilots in the performance of their duties.

**11.** 28 U.S.C. § 2254(d) provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States....

28 U.S.C. § 2254(d).

**12.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit rendered on or before September 30, 1981.

**1340**

where a state statute is found to be "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Id.* at 53, 27 L.Ed.2d 669. Applying *Younger,* the Eleventh Circuit has held that federal court intervention is required where a petitioner demonstrates that federal preemption of state law is "readily apparent." *Baggett v. Dep't of Prof'l Regulation,* 717 F.2d 521, 524 (11th Cir.1983).

In *Baggett,* the plaintiff was a marine pilot, holding both federal and state licenses, who allegedly piloted a tug and barge into Tampa Bay Harbor while intoxicated. Notwithstanding the fact that the tug and barge were considered "enrolled vessels," and thereby subject to the exclusive control of the United States, Florida's Department of Professional Regulation, through its Board of Pilot Commissioners, filed an administrative complaint against the plaintiff for piloting the vessels while intoxicated. The plaintiff, however, argued that federal law preempted state law because his actions as a tug and barge pilot were governed by federal statutes and regulations, and therefore the state agency could not pursue an administrative complaint against him.

The Eleventh Circuit, agreeing with the plaintiff, held that where federal preemption is readily apparent, abstention is not appropriate.[13] *Baggett,* 717 F.2d at 524. While observing that "Florida has an important interest in insuring that state licensed marine pilots do not navigate registered vessels in a dangerous manner," the Eleventh Circuit emphasized that "Con-

gress, however, has determined that the United States has an identical interest in insuring safe pilotage of enrolled vessels, and that the states should not interfere with federal enforcement of its requirements of pilots operating under federal licenses." *Id.* at 523–24. The Eleventh Circuit concluded that "a pilot operating under his federal license ought not to be subject to state disciplinary proceedings when his conduct conforms to federal regulations." *Id.* at 523.

■ In light of *Baggett,* and because it is readily apparent that federal law exclusively governs the qualifications and capacity of pilots to operate commercial aircraft in interstate commerce, abstention is not proper in this case. *See infra* sec. IV. To abstain from addressing the merits of Hughes and Cloyd's petition would be to subject them to trial on charges for which the State lacks jurisdiction. *Baggett,* 717 F.2d at 524 ("When preemption is readily apparent...the state tribunal is acting beyond the lawful limits of its authority....").

### III. GENERAL HABEAS REQUIREMENTS

■ To prevail on a federal habeas petition filed pursuant to 28 U.S.C. § 2254(d)(1), a petitioner must demonstrate that "the relevant state-court decision was either (1) *contrary to...* clearly established Federal law, as determined by the Supreme Court of the United States or (2) *involved an unreasonable application of...* clearly established Federal law, as determined by the Supreme Court of the United States." *Williams v. Taylor,* 529 U.S. 362, 404–05, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (internal quotations omitted).[14] Although the State Courts did

---

**13.** Specifically, in finding federal preemption, the Eleventh Circuit relied on the terms of 46 U.S.C. § 364, which provides in relevant part that: "All coastwise seagoing vessels, and vessels navigating the Great Lakes, shall be subject to the navigation laws of the United

States, when navigating within the jurisdiction thereof...." 46 U.S.C. § 364 (repealed 1983).

**14.** A state court decision will be *contrary to* clearly established Supreme Court precedent

not explain the basis for their decisions rejecting Hughes and Cloyd's federal preemption arguments, such fact does not prevent application of the *Williams* test. All that is required for purposes of a federal habeas petition "is a rejection of the claim on the merits [by the state court], not an explanation." *Wright v. Secretary for the Dep't of Corrections*, 278 F.3d 1245, 1255 (11th Cir.2002) ("To conclude otherwise on this issue would be writing into § 2254(d)(1) an additional requirement that Congress did not put there-a requirement that the state courts explain the rationale of their decisions.").[15]

Thus, the Court assumes that the State Courts applied the correct Supreme Court precedent on federal preemption, and proceeds not under the "contrary to" test which is used only where the state court applies the incorrect law, but under the "unreasonable application of" test as the Eleventh Circuit did in *Wright*. As discussed *infra* sec. IV, the Court concludes that the State Courts unreasonably applied the well-established federal preemption doctrine to the facts in this case.

## IV. FEDERAL PREEMPTION

### A. *General Principles of Federal Preemption*

The Supremacy Clause of the United States Constitution provides the foundation for the federal preemption doctrine:

> if: (1) the state court applies a rule that contradicts the governing law set forth by the Supreme Court; or (2) the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Williams*, 529 U.S. at 405–06, 120 S.Ct. 1495. Alternatively, a state court decision involves *an unreasonable application of* clearly established Supreme Court precedent if: (1) the state court identifies the correct governing legal rule from the Supreme Court's cases, but unreasonably applies the rule to the facts of the petitioner's case; or (2) the state court

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof...shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const., art. VI, cl. 2. The Supreme Court has held that the Supremacy Clause requires federal preemption in three circumstances: (1) express preemption, where a federal statute contains explicit preemptive language; (2) field preemption, where the federal regulatory scheme is so pervasive that Congress left no room for the States to supplement it; and (3) conflict preemption, where compliance with both federal and state regulations is a physical impossibility or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Pharmaceutical Research & Mfrs. of Am. v. Meadows*, 304 F.3d 1197, 1205 (11th Cir.2002) (citing *Gade v. Nat'l Solid Wastes Mgmt.*, 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992)). "Congressional intent is the ultimate touchstone in a preemption case...and this intent governs [a court's] determination of whether federal law preempts state law." *This That and the Other Gift & Tobacco, Inc. v. Cobb County*,

unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Id.* at 407, 120 S.Ct. 1495.

**15.** For example, in *Wright*, where the state court did not issue an opinion explaining the basis for its decision rejecting the petitioner's procedural due process claim, the Eleventh Circuit proceeded to analyze the petitioner's habeas petition under the "unreasonable application of" prong. *Wright*, 278 F.3d at 1256.

*Ga.*, 285 F.3d 1319, 1322 (11th Cir.2002) (citations and internal quotations omitted).

## B. *Field Preemption*

■ Hughes and Cloyd's primary argument is that Congress and the FAA, under its Congressionally mandated authority to regulate, have preempted the field of law governing the qualifications and capacity of pilots who operate commercial aircraft in interstate commerce. Field preemption exists where either: (1) the pervasiveness of the federal regulation precludes supplementation by the States; (2) the federal interest in the field is sufficiently dominant; or (3) the object the federal law seeks to obtain and the character of obligations federal law imposes reveal the same purpose. *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988) (holding that the federal Natural Gas Act preempts Michigan's state law regulating the issuance of long-term securities because Michigan's regulation "impinges on a field that the federal regulatory scheme has occupied"); *Fidelity Fed. Sav. & Loan Ass'n v. Cuesta*, 458 U.S. 141, 153–54, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) (noting that administrative regulations have the same preemptive power as statutes where Congress has delegated the requisite authority to the administrative agency).

■ The ultimate question in any preemption inquiry is whether Congress intended for the federal government to have exclusive control of a particular field of law. *Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987). It must also be noted that "although the term 'field preemption' suggests a broad scope, the scope of a field deemed preempted by federal law may be narrowly defined." *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 367 (3d Cir.1999). The Court's holding here is informed by the facts of the case and is thus narrowly applied only to the field of qualifications and capacity to pilot regularly scheduled commercial flights in interstate commerce where there are no actual fatalities or injuries to persons or property. Looking at the pervasiveness of the federal regulations in this field and the dominant federal interests in promoting uniform standards regulating the behavior of commercial pilots, it is readily apparent that Congress has preempted the field.

### (1) Pervasiveness of the Federal Regulations

In 49 U.S.C. § 44701(a), Congress granted the FAA the authority to promote safe flight of civil aircraft in air commerce. Specifically, 49 U.S.C. § 44701(a)(5) requires the FAA to create regulations regarding the "practices, methods, and procedure the Administrator finds necessary for safety in air commerce and national security." Additionally, 49 U.S.C. § 44701(c) requires the Administrator to "carry out this chapter in a way that best tends to reduce or eliminate the possibility or recurrence of accidents in air transportation." Thus, this language indicates Congress' clear intent to empower the FAA to regulate the airline transportation industry to ensure safe flights. A key factor in flight safety is the qualifications and capacity of those at the helm of the flight, namely the pilots.

Pursuant to this grant of authority from Congress, the FAA has promulgated extensive regulations in the area of commercial pilot qualifications, including pilot licensing (14 C.F.R. § 61.1 *et seq.*), pilot medical requirements (14 C.F.R. § 67.1 *et seq.*), pilot conduct (14 C.F.R. § 91.1 *et seq.*), operating requirements (14 C.F.R. §§ 121.1 *et seq.* & 135.1 *et seq.*), and the misuse of alcohol while on duty (14 C.F.R. §§ 135.253 & 121.458).[16] Additionally, Congress has made it a federal crime for pilots to operate a commercial aircraft with

---

**16.** 14 C.F.R. §§ 135.253 and 121.458 both provide in relevant part that: "No covered employee shall report for duty or remain on

a blood alcohol concentration of 0.10 or more. 18 U.S.C. §§ 341–343. The FAA has also promulgated regulations imposing criminal penalties for specified violations of the Federal Aviation Act or any related regulations. *See* 14 C.F.R. § 13.23.[17]

This comprehensive web of legislation makes it readily apparent that Congress intended to preempt the field of pilot qualifications and capacity to fly a commercial airliner in interstate commerce. *See French v. Pan Am Express, Inc.*, 869 F.2d 1, 6 (1st Cir.1989) (holding that the Federal Aviation Act preempts Rhode Island's employee drug testing law as applied to commercial pilots, and inferring "from the Federal Aviation Act an unmistakably clear intent to occupy the field of pilot regulation related to air safety, to the exclusion of state law"); *see also Abdullah*, 181 F.3d at 367 ("[T]he FAA and relevant federal regulations establish complete and thorough safety standards for interstate and international transportation that are not subject to supplementation by, or variation among, jurisdictions.").

### (2) Federal Interests and Goals

The Federal Aviation Act embodies Congress' goals and interests in the field of airline transportation. The following statement in the Senate Report on the Act provides a clear expression of Congress'

intent to grant to the FAA complete regulatory power over this field:

> [A]viation is unique among transportation industries in its relation to the federal government—it is the only one whose operations are conducted almost wholly within federal jurisdiction, and are *subject to little or no regulation by States or local authorities*. Thus the federal government bears virtually complete responsibility for the promotion and supervision of this industry in the public interest.

*Abdullah*, 181 F.3d at 368 (citing S.Rep. No. 1811, 85th Cong., 2d Sess. 5 (1958)) (emphasis added). The House Report reenforces the Senate's view, stating that the "administration of the new Federal Aviation Agency (1) would be given full responsibility and authority for the . . . promulgation and enforcement of safety regulations. . . ." *French*, 869 F.2d at 5 (citing H.R.Rep. No. 2360, 85th Cong., 2d Sess., 22, *reprinted in* 1958 U.S.C.C.A.N. 3741, 3741).

The FAA, pursuant to its interpretation of its Congressional authority to preempt the states in certain areas, has stated that pursuant to an "analysis of the legislative history of the Federal Aviation Act and recognition of the comprehensive regulatory scheme governing aviation . . . courts throughout the country have recognized a

---

duty requiring the performance of safety-sensitive functions while having an alcohol concentration of 0.04 or greater."

**17.** 14 C.F.R. § 13.23 provides in relevant part: "Sections 902 and 1203 of the Federal Aviation Act of 1958 [now codified as 49 U.S.C. 46316 and 46307], provide criminal penalties for any person who knowingly and willfully violates specified provisions of that Act, or any regulation or order issued under those provisions." For example, the Federal Aviation Act provides criminal penalties for registration violations involving aircraft not providing air transportation (49 U.S.C. § 46306), violation of national defense air-

space (49 U.S.C. § 46307), interference with air navigation (49 U.S.C. § 46308), concession and price violations (49 U.S.C. § 46309), reporting and recordkeeping violations (49 U.S.C. § 46310), unlawful disclosure of information (49 U.S.C. § 46311), transporting hazardous material (49 U.S.C. § 46312), refusing to appear or produce records (49 U.S.C. § 46313), entering aircraft or airport area in violation of security requirements (49 U.S.C. § 46314), lighting violations involving transporting controlled substances by aircraft not providing air transportation (49 U.S.C. § 46315), and general criminal penalties when specific penalties are not provided (49 U.S.C. § 46316).

Congressional intent to preclude supplementation by the States."[18] (*See* Oct. 15, 2002 Letter from FAA Deputy Chief Counsel to Gen. Counsel of Aircraft Owners and Pilots Assoc., [DE–3], Exh. K). Additionally, the Airways Modernization Board Chairman, representing the Executive Branch before the House during its consideration of the Act, declared that "[i]t is essential that one agency of government, and one agency alone, be responsible for issuing safety regulations if we are to have timely and effective guidelines for safety in aviation." *Abdullah,* 181 F.3d at 369 (citing 1958 U.S.C.C.A.N. at 3761). This dominant federal interest in uniform, nationwide standards is especially important when dealing with federally certified pilots operating commercial aircraft in interstate commerce. If the states were free to regulate in this area, "a patchwork of state laws...some in conflict with each other, would create a crazyquilt effect." *French,* 869 F.2d at 6.

It is important to note that this federal regulatory scheme has explicitly saved certain State actions from preemption. Where there is "actual loss of life, injury, or damage to property," the FAA recognizes the State's interest in protecting its citizens from a pilot's misuse of alcohol. *See* 14 C.F.R. Pt. 121, App. I, § XI (B). Therefore, State action is appropriate and authorized where a pilot's actions result in actual loss of life, injury, or damage to property. Had the actions of Hughes and Cloyd produced such consequences, there would be nothing to shield them from the full police powers of the State. However, Respondents concede that, fortunately, Hughes and Cloyd did not cause any harm to any person or property. Thus, because of the dominant federal interest in uniformity of pilot qualification regulation, the goals of Congress in creating the FAA, and the pervasive FAA regulatory scheme, it is readily apparent that the federal government has preempted the field of pilot qualifications in regularly scheduled commercial interstate flights where there is no actual loss of life, injury or damage to property.[19]

**18.** While an administrative agency's own views of preemption are not dispositive on the issue, the Supreme Court has noted, that "the [Federal] agency's own views should make a difference" when determining if implied preemption exists. *Geier v. Am. Honda Motor Co., Inc.,* 529 U.S. 861, 883, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000) (placing "some weight" on the Department of Transportation's suggestion that state actions based on automotive safety were preempted by federal law).

**19.** Respondents cite a number of opinions in which various state courts have upheld state prosecutions of pilots for a variety of infractions against federal preemption arguments. *See State of Minnesota v. Sherbrooke,* 633 N.W.2d 856 (Minn.Ct.App.2001) (upholding state prosecution of pilot who unlawfully landed an airplane on the highway, and holding that "federal law does not preempt states from regulating the operation of an aircraft on a state highway"); *State of Ohio v. Collins,* 18 Ohio App.3d 72, 480 N.E.2d 1132 (1984) (upholding state prosecution of pilot who failed to exhibit his pilot's license upon demand of state police officer, and finding no pervasive federal regulatory scheme in area of pilot licensing); *People v. Valenti,* 200 Cal. Rptr. 862 (Cal.App.3d1984) (upholding state prosecution of pilot for unsafe operation of aircraft, and rejecting federal preemption argument); *Marsh v. State of New Mexico,* 95 N.M. 224, 620 P.2d 878 (N.M.1980) (upholding state prosecution of pilot who flew small plane with 479 pounds of marijuana over Valencia County, and holding that Federal Aviation Act does not preempt state prosecution for criminal offenses occurring in airspace over New Mexico); *Ward v. State of Maryland,* 280 Md. 485, 374 A.2d 1118 (1977) (upholding state prosecution of pilot for operating an aircraft in a reckless manner, and holding that the Federal Aviation Act did not preempt Maryland criminal laws). These non-binding cases in other jurisdictions are distinguishable on a variety of grounds, beginning with the fact that none of them involve pilots operating a regularly scheduled com-

## C. *Express Preemption*

In addition to preempting the field, the FAA has expressly preempted certain State laws. Express preemption exists where a federal statute contains explicit preemptive language. *Meadows*, 304 F.3d at 1205. The Supreme Court has also held that "Federal regulations have no less preemptive effect than federal statutes." *Cuesta*, 458 U.S. at 153–54, 102 S.Ct. 3014 ("Where Congress has directed an administrator to exercise his discretion, his judgments are subject to judicial review only to determine whether he has exceeded his statutory authority or acted arbitrarily."). Thus, the first question in an express preemption inquiry involving administrative regulations is whether Congress has granted authority to the FAA to regulate in the area of the qualifications of commercial pilots in interstate commerce. Assuming that question is answered affirmatively, the question becomes whether the FAA has used that power to preempt the state laws at issue here.

As discussed above, Congress has granted the FAA the power to regulate the field of commercial pilot qualifications to promote safety in interstate air commerce and national security. See *supra* sec. IV. B.(1). Pursuant to this grant of power, the FAA has done so. Especially pertinent here is 14 C.F.R. Pt. 121, Appendix I, § XI, which contains explicit language preempting the States in certain areas.[20]

14 C.F.R. Pt. 121, App. I, § XI expressly provides:

A. The issuance of 14 CFR parts 65, 121, and 135 by the FAA preempts any state or local law, rule, regulation, order, or standard covering the subject matter of 14 CFR parts 65, 121, and 135, including but not limited to, drug testing of aviation personnel performing safety-sensitive functions.

B. The issuance of 14 CFR parts 65, 121, and 135 does not preempt provisions of state criminal law that impose sanctions for reckless conduct of an individual that leads to *actual loss of life, injury, or damage to property* whether such provisions apply specifically to aviation employees or generally to the public. (emphasis added).

The plain language of this regulation expressly preempts all state criminal laws governing incidents that do not involve "actual loss of life, injury, or damage to property," and are covered in 14 C.F.R. parts 65, 121, or 135. *See* 14 C.F.R. Pt. 121, App. I, § XI. While Part 65 regulates certification of airmen other than flight crewmembers, Parts 121 and 135 regulate flight crewmembers.[21] Specifically, in a section entitled "Misuse of Alcohol," 14 C.F.R. §§ 121.458 and 135.253 prohibit flight crewmembers from using alcohol or having a blood alcohol level above 0.04 while performing safety-sensitive functions, performing their duties within 8 hours after using alcohol, or refusing to submit to alcohol testing.[22]

---

mercial airliner in interstate commerce, but rather all involve private pilots operating private aircraft. Additionally, *Ward*, which is the most factually similar case, in that it involves the piloting of an aircraft while under the influence of alcohol, was decided prior to Congress' enactment of 18 U.S.C. § 342 in 1986, and the FAA's promulgation of 14 C.F.R. Pt. 121, App. I, § XI in 1994.

**20.** It appears that neither the Petitioners nor Respondents brought 14 C.F.R. Pt. 121, App. I, § XI to the State Courts' attention. In fact, it was only in a belated filing of Supplemental Authorities in Support of Response to Petition for Writ of Habeas Corpus, that Counsel for Respondents brought Appendix I to this Court's attention.

**21.** Both of these sections apply to all employees listed as "covered employees" in 14 C.F.R. Pt. 121, App. J. This category includes any employee who performs "Flight crewmember duties," such as pilots.

**22.** Although the State argues that 14 C.F.R. § 91.17 contradicts the preemptive language

In sum, 14 C.F.R. Pt. 121, App. I, § XI expressly prevents the states from pursuing criminal charges for unlawful alcohol consumption against federally certified commercial pilots operating regularly scheduled commercial flights in interstate commerce. Therefore, it is readily apparent that the federal government's preemptive regulation expressly prevents the State from criminally prosecuting Hughes and Cloyd.[23]

## V.  CONCLUSION

Based upon the foregoing reasons, the Court holds that federal law preempts state law in the area of pilot qualifications and capacity to operate commercial aircraft in interstate commerce where there is no actual loss of life, injury, or damage to property. There are no allegations that Hughes and Cloyd caused actual injury to any persons or property. Therefore, the State lacks jurisdiction to prosecute them for matters that are solely within the jurisdiction of the federal government. Because federal preemption is readily apparent, the Court must not abstain in this case. *Baggett,* 717 F.2d at 524. Additionally, in light of the well-established Supreme Court precedent setting forth the rules governing field and express preemption, the State Courts unreasonably applied the federal preemption doctrine to the facts in this case. *See French,* 869 F.2d at 6 (noting in the context of pilot drug testing "[i]t is simply unreasonable to hypothesize that Congress intended a commercial pilot on a Providence–to–Balti-

more–to–Miami run to be subject to drug testing say, in Maryland, but not in Rhode Island or in Florida"). Here, it is unreasonable to conclude that Congress intended Hughes and Cloyd to be subject to different state criminal laws governing blood-alcohol content as the aircraft traveled from Florida to Arizona.

It is important to note that this narrow holding does not preclude a state from pursuing a criminal prosecution where a commercial airline pilot's actions result in actual loss of life, injury, or damage to property. In addition, this decision is limited to the specific facts and circumstances of this case, and thus does not address the question of whether federal law preempts state law in the area of pilot qualification and capacity to operate any aircraft other than regularly scheduled commercial flights operating in interstate commerce. Accordingly, it is hereby

ORDERED that:

(1) The Petitioners Christopher Scott Hughes and Thomas Porter Cloyd's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 is GRANTED;

(2) The State Court shall discharge Christopher Scott Hughes and Thomas Porter Cloyd from the State's custody;

(3) The state criminal proceedings against Christopher Scott Hughes and Thomas Porter Cloyd are quashed;

(4) The State of Florida is enjoined from taking any further action against

---

of 14 C.F.R. Pt. 121, App. I, § XI, a thorough reading of § 91.17 reveals that it does not. First, § 91.17 contains no language regarding preemption. Second, although § 91.17(c) mandates that crewmembers shall submit to State officers administering alcohol tests, this does not contradict the express preemption in 14 C.F.R. Pt. 121, App. I, § XI because the FAA made an exception for state prosecutions where there is actual loss of life, injury, or damage to property. In fact, § 91.17(e) pro-

vides for state officers to administer these tests in order to aid the federal government in enforcing its own regulations, and allows state administered tests to be used in the enforcement of federal law. This cooperative arrangement does not disrupt the balance set out in 14 C.F.R. Pt. 121, App. I, § XI.

**23.**  Given the fact that field and express preemption are readily apparent, it is not necessary to address conflict preemption.

Christopher Scott Hughes and Thomas Porter Cloyd for the actions described in *State of Florida v. Christopher Scott Hughes and Thomas Porter Cloyd,* Case No. F02–019207B;

(5) The effect of this Order is stayed for thirty (30) days to permit any appeal; and

(6) This case is CLOSED.