[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 21, 2004
THOMAS K. KAHN
CLERK

————————————————

No. 03-14122

————————————————

D. C. Docket No. 03-21300-CV-PAS

CHRISTOPHER SCOTT HUGHES,
THOMAS PORTER CLOYD,

Petitioners-Appellees,

versus

ATTORNEY GENERAL OF FLORIDA,
Charlie Crist,

Respondent-Appellant,

AIR LINE PILOTS ASSOCIATION,

Amicus Curiae.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

**(July 21, 2004)**

Before ANDERSON, HULL and PRYOR, Circuit Judges.

ANDERSON, Circuit Judge:

This case involves two airline pilots who have been charged with violating Florida criminal statutes prohibiting the operation of an aircraft while intoxicated. Prior to the commencement of the state criminal trial, and after making pre-trial motions in that case, the pilots filed the instant action in the United States District Court for the Southern District of Florida seeking pretrial habeas relief from their pending criminal trial in state court. They assert that the Florida statutes at issue are preempted by federal law; they seek, _inter alia_, to enjoin the state criminal proceedings. The district court, after determining that it should not abstain from deciding the case, agreed with the pilots that both express and field preemption preempted the Florida criminal statutes at issue. The Florida Attorney General appealed the district court's grant of habeas relief. Because we find the preemption claims in the instant case are not facially conclusive, we reverse the district court; we hold that the district court should have abstained.

## I.    FACTS AND PROCEDURAL HISTORY

On the morning of July 1, 2002, Christopher Scott Hughes and Thomas Porter Cloyd (appellees), America West pilots at the time, reported to America West Flight 566 for a flight from Miami to Phoenix. Upon passing through a

security checkpoint at Miami International Airport, officials smelled alcohol on appellees. The officials subsequently reported this to the Miami-Dade County Police. Appellees, in the meantime, boarded Flight 566, and after performing pre-flight checks and the boarding of passengers, the pilots pushed away from the terminal at Miami International Airport. However, before takeoff, the pilots were instructed to taxi back to the gate, whereupon they were interviewed by Miami-Dade police officers, and approximately two hours later were taken to a Miami-Dade police station where the officers administered breathalyser tests to both appellees. The breathalyser results were 0.084 and 0.081 breath alcohol level for Hughes and 0.091 and 0.090 breath alcohol level for Cloyd. Appellees were subsequently charged with operating an aircraft while intoxicated,[1] operating a vehicle while intoxicated,[2] and culpable negligence under Florida state law. Prior to their criminal trial in Florida state court, appellees filed motions to dismiss both of the informations for lack of subject matter jurisdiction on the basis of federal preemption, which the state trial court denied. Appellees then pursued the matter through the Florida appellate courts. The parties agree that the issue has been exhausted.

[1]Fla. Stat. § 860.13.

[2]Fla. Stat. § 316.193(1).

Appellees then filed a pre-trial petition for writ of habeas corpus in the United States District Court for the Southern District of Florida. Appellees claimed that federal law preempted the Florida state statutes under which appellees were being prosecuted and therefore the district court should, inter alia, enjoin the state criminal proceedings.

The district court granted appellees the relief they sought, directing the State of Florida to discharge appellees, quashing the state criminal proceedings, and enjoining the State of Florida from taking any further action in the matter. Hughes v. Eleventh Judicial Circuit of Fla., 274 F. Supp. 2d 1334, 1336 (S.D. Fla. 2003). The district court decided that abstention would be inappropriate in the present case. Id. at 1340. After citing the general rule, announced in Younger v. Harris, 401 U.S. 37, 46, 91 S. Ct. 746, 751 (1971), that federal courts should not interfere with pending state court criminal proceedings, the district court went on to discuss an exception to this rule – that a federal court may intervene in extraordinary circumstances, such as when a state statute is found to be "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." Hughes, 274 F. Supp. 2d at 1340 (quoting Younger, 401 U.S. at 53-54, 91 S. Ct. at 755). The district court, citing Baggett v. Dep't of Prof'l Reg., 717

4

F.2d 521, 524 (11th Cir. 1983), noted that this Circuit has held that such intervention is permitted where a petitioner demonstrates that federal preemption of state law is "readily apparent." Hughes, 274 F. Supp. 2d at 1340. The district court then determined that the preemption of the state law in the present case is readily apparent, and thus it was appropriate to intervene. Id. The district court concluded that federal law preempts state law in the area of pilot qualification and capacity to operate regularly scheduled commercial flights in interstate commerce, and that the instant Florida criminal statutes fell within this category, and thus were preempted. Id. at 1346.

## II. HABEAS REVIEW

The present habeas petition was initially brought pursuant to 28 U.S.C. § 2254. However, because this petition for habeas relief is a pre-trial petition it would only be properly asserted pursuant to 28 U.S.C. § 2241. See Medberry v. Crosby, 351 F.3d 1049, 1060 (11th Cir. 2003), cert. denied, ___ U.S. ___, 124 S. Ct. 2098 (2004) ("State pre-trial detention, for example, might violate the Constitution or the laws or treaties of the United States. Yet a person held in such pre-trial detention would not be 'in custody pursuant to the judgment of a State court.' Such a prisoner would file an application for a writ of habeas corpus governed by § 2241 only."); Stacey v. Warden, Apalachee Corr. Inst., 854 F.2d

5

401, 403 n.1 (11th Cir. 1988) ("Pre-trial habeas petitions . . . are properly brought under 28 U.S.C. § 2241, which applies to persons in custody regardless of whether final judgment has been rendered."). Even though the district court applied the standards appropriate for § 2254 petitions, instead of dismissing appellees' petition as improperly brought pursuant to § 2254, we will treat appellees' petition as if brought pursuant to § 2241(c), and review the petition accordingly.[3] In the present case petitioners have met the exhaustion requirements necessary to obtain relief pursuant to 28 U.S.C. § 2241.[4]

_____

[3] There is recent authority of treating appellees' petition in this manner. See Aquiar v. Tafoya, 95 Fed. App. 931, 932 (10th Cir. 2004) (unpublished) ("Although petitioner filed his habeas petition under 28 U.S.C. § 2254, the district court properly construed the petition . . . as challenging the execution of his sentence under 28 U.S.C. § 2241."). See also Dickerson v. State of Louisiana, 816 F.2d 220, 224 (5th Cir. 1987) (construing the pro-se petitioner's petition brought under § 2254 as if brought under § 2241); Fisher v. Rose, 757 F.2d 789, 792 n.2 (6th Cir. 1985) (construing an improper pre-trial § 2254 petition by counseled petitioner pursuant to § 2241).

After appellees go through their state criminal trials they would not be prohibited from bringing a § 2254 habeas petition because they previously brought the claim in a § 2241 pre-trial habeas petition in this case. See 28 U.S.C. § 2244(a). Because we abstain from hearing appellees' claims, there has been no decision on the merits that would prohibit a later § 2254 habeas petition. Id. Of course, it would be necessary for appellees to meet any other requirements for bringing a § 2254 post-trial habeas petition, and we otherwise express no opinion with respect to such a later petition.

[4] In Fain v. Duff, the former Fifth Circuit explained that

> [t]he exhaustion of state remedies . . . was [originally] left in the discretion of the district court, [but] the requirement soon became known as a jurisdictional one. With respect to collateral attack on convictions in state court, the requirement was codified in 28 U.S.C. § 2254(b), but the requirement applies to all habeas corpus actions.

6

## III.   ABSTENTION

### A.   General Standards and the Standard of Review

When a petitioner seeks federal habeas relief prior to a pending state criminal trial the petitioner must satisfy the "Younger abstention hurdles" before the federal courts can grant such relief.  Kolski v. Watkins, 544 F.2d 762, 766 (5th Cir. 1977).[5]  Therefore, before turning to the preemption issue in earnest, we must first determine whether the district court should have abstained from deciding the present case.  We review a Younger abstention decision for an abuse of discretion.  31 Foster Children v. Bush, 329 F.3d 1255, 1274 (11th Cir.), cert. denied, ___ U.S. ___, 124 S. Ct. 483 (2003).  However, it would be an abuse of the district court's discretion to apply an inappropriate legal standard or fail to follow the proper procedures in making its determination.  Boyes v. Shell Oil Prods. Co., 199 F.3d 1260, 1265 (11th Cir. 2000).

In Younger, 401 U.S. 37, 91 S. Ct. 746, the Supreme Court established that "absent extraordinary circumstances federal courts should not enjoin pending state

488 F.2d 218, 223 (5th Cir. 1973).  See also Medberry, 351 F.3d at 1060 ("The 1948 codification which created § 2254 merely codified judge-made restrictions on issuing the writ of habeas corpus as authorized under § 2241.").

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

criminal prosecutions."  New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 364, 109 S. Ct. 2506, 2516 (1989) (NOPSI).  This decision was based not on jurisdiction, but on the principles of equity and comity.  NOPSI, 491 U.S. at 364, 109 S. Ct. at 2516 (citing Younger, 401 U.S. at 43-44, 91 S. Ct. at 750).  Federal courts have consistently recognized this limitation on enjoining state criminal prosecutions unless one of a few narrow exceptions is met.[6]

In the present case, the pertinent exception is the exception for irreparable injury.[7]  See Younger 401 U.S. at 46-48, 91 S. Ct. at 751-53.  The Supreme Court

---

[6] In Younger, the Supreme Court set out three exceptions to the abstention doctrine:  (1) there is evidence of state proceedings motivated by bad faith, (2) irreparable injury would occur, or (3) there is no adequate alternative state forum where the constitutional issues can be raised. Younger, 401 U.S. at 45, 53-54, 91 S. Ct. at 751, 755.

[7] The Supreme Court has explored this exception more fully in several decisions since Younger.  In Kugler v. Helfant, 421 U.S. 117, 123-25, 95 S. Ct. 1524, 1530-31 (1975), the Court stated:

> Although the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution alone do not constitute "irreparable injury" in the "special legal sense of that term," [Younger, 401 U.S.], at 46, 91 S. Ct., at 751, the Court in Younger left room for federal equitable intervention in a state criminal trial where there is a showing of "bad faith" or "harassment" by state officials responsible for the prosecution, id., at 54, 91 S. Ct., at 755, where the state law to be applied in the criminal proceeding is "'flagrantly and patently violative of express constitutional prohibitions,'" id., at 53, 91 S. Ct., at 755, or where there exist other "extraordinary circumstances in which the necessary irreparable injury can be shown even in the absence of the usual prerequisites of bad faith and harassment."  Ibid. . . .

> The policy of equitable restraint expressed in Younger v.

has noted that irreparable injury may be shown if a state statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it."[8] Id. at 53-54, 91 S. Ct. at 755. Before turning to the

> Harris, in short, is founded on the premise that ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights. See Steffel v. Thompson, 415 U.S. 452, 460, 94 S. Ct. 1209, 1216, 39 L. Ed. 2d 505. Only if "extraordinary circumstances" render the state court incapable of fairly and fully adjudicating the federal issues before it, can there be any relaxation of the deference to be accorded to the state criminal process. The very nature of "extraordinary circumstances," of course, makes it impossible to anticipate and define every situation that might create a sufficient threat of such great, immediate, and irreparable injury as to warrant intervention in state criminal proceedings. But whatever else is required, such circumstances must be "extraordinary" in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation.

421 U.S. at 123-25, 95 S. Ct. at 1530-31 (footnote omitted). In Kugler, the Court also discussed the scope of the "other extraordinary circumstances" it referenced, noting that the exception would encompass situations where a state statute was "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it" or where the state decision maker was incompetent by reasons of bias to adjudicate the issues pending before it. Id. at 125 n.4, 95 S. Ct. at 1531 n.4 (quotation omitted). See also Moore v. Sims, 442 U.S. 415, 433, 99 S. Ct. 2371, 2382 (1979) (discussing how Kugler was the most detailed discussion of the "extraordinary circumstances" that would constitute "irreparable harm" to satisfy the exception to the Younger doctrine).

[8] This Circuit has emphasized the narrowness of this exception to the Younger doctrine. See, e.g., Butler v. Ala. Inquiry Comm'n, 245 F.3d 1257, 1265 (11th Cir. 2001) ("Also, while we today make no decision about the constitutionality of Alabama's judicial canons, we doubt that Canon 7(B)(2) patently or fragrantly violates the Constitution 'in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it.'") (citation omitted); Kolski, 544 F.2d at 766 ("The statute in this case, challenged as facially

9

application of this exception in the instant case, we must first discuss the Baggett, 717 F.2d 521, decision from this Circuit, as well as the Supreme Court's subsequent decision in NOPSI, 491 U.S. 350, 109 S. Ct. 2506, and how those cases inform our analysis in the instant case.

B.     NOPSI and Baggett

In Baggett, 717 F.2d 521, this Court addressed the issue of Younger abstention as it relates to federal preemption. We held that the state administrative agency attempting to enforce state regulations upon a tugboat pilot had no competence to proceed because of preemption by federal statutes. Id. at 523-24. Although the district court in Baggett noted that federal statutes and regulations preempted the state regulations at issue in the case, the district court nevertheless concluded that Younger abstention was appropriate because the plaintiff had failed to show irreparable injury would result. Id. at 523. This Court reversed the district court, holding that the preemption in the case was "readily apparent," and that Younger abstention was inappropriate. Id. at 524.

In 1989, several years after this Court's decision in Baggett, the Supreme

_____

unconstitutional by the Petitioner, is certainly of questionable validity. But we certainly cannot say at this stage that this statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.' As in Younger, 'the possible unconstitutionality of a statute "on its face" does not in itself justify an injunction against good-faith attempts to enforce it . . . .'") (citations omitted).

10

Court issued its opinion in NOPSI, 491 U.S. 350, 109 S. Ct. 2506, addressing preemption arguments similar to those raised in Baggett. First, the Court rejected the claim that a substantial federal preemption claim would preclude Younger abstention. NOPSI, 491 U.S. at 364-65, 109 S. Ct. at 2516. The Court specifically noted that there is not any distinction between a claim of federal preemption and any other constitutional challenge to state action as it relates to a State's interest in its own proceedings enforcing or reviewing the state action. Id. at 365, 109 S. Ct. at 2516. The Court reasoned that because a substantial constitutional challenge to state action will not alone compel the exercise of federal jurisdiction there is no reason to treat a substantial federal preemption claim any differently. Id. The Court explained that when the general nature of the underlying state proceedings are appropriate, but a party is merely challenging the state's ability to make a particular action subject to those proceedings, the analytical focus of the challenge is too narrow. Id. at 366, 109 S. Ct. at 2517. The Court compared such a challenge to the one addressed in Younger itself, where the party had contended that First Amendment protections made the subject of his prosecution improper. Id.

The Court then shifted its focus to the "irreparable injury" exception to Younger abstention. The Court noted that "irreparable injury" may be established

11

by showing that the challenged state statute is "'flagrantly and patently violative of express constitutional prohibitions . . . .'" Id. at 366, 109 S. Ct. at 2517 (citation omitted). The Court did not decide whether a federal preemption claim could ever meet the "irreparable injury" exception, and left open the possibility that a "facially conclusive" claim of preemption would meet this exception.[9] Id.

Appellant argues that NOPSI's "facially conclusive" standard applies in the present case, and overruled our decision in Baggett. Regardless of the differences in semantics between the terms "facially conclusive" and "readily apparent," their import is the same: only the clearest of federal preemption claims would require a federal court to hear a preemption claim when there are underlying state court proceedings and when that claim can be raised in the state forum.[10] To the extent that the "readily apparent" standard can be construed to encompass more claims of preemption than a "facially conclusive" standard, the latter must control.

Therefore, the appropriate inquiry is whether appellees' federal preemption claims are facially conclusive, and thus meet the relevant exception to Younger abstention. Because, as discussed below, we determine that appellees' claims of

---

[9] The Court concluded it did not need to decide because the proceedings at issue in that case did not establish a facially conclusive claim.

[10] We again emphasize the narrowness of the exception for a "facially conclusive" preemption claim in that it is derived from the narrow "irreparable injury" exception to Younger abstention. See supra note 8.

federal preemption are not "facially conclusive," we reverse the district court's decision not to abstain from deciding the present case.

## IV.     PREEMPTION

A.      General Standards

The basis for federal preemption comes from the Supremacy Clause of the Constitution, the second clause of Article VI.  This Court recently summarized the various types of federal preemption:

> Congress's intent to preempt state law may be explicitly stated in the language of a federal statute or implicitly contained in the structure and purpose of the statute.  Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S. Ct. 1305, 1309, 51 L. Ed. 2d 604 (1977).  Bearing in mind this distinction between express and implied preemption, the Supreme Court has identified three types of preemption: (1) express preemption; (2) field preemption; and (3) conflict preemption.  Wisconsin Public Intervenor v. Mortier, 501 U.S. 597, 604-05, 111 S. Ct. 2476, 2481-82, 115 L. Ed. 2d 532 (1991); This That & The Other Gift & Tobacco, Inc. v. Cobb County, Ga., 285 F.3d 1319, 1322 (11th Cir. 2002).  "Express preemption" occurs when Congress has manifested its intent to preempt state law explicitly in the language of the statute.  If Congress does not explicitly preempt state law, however, preemption still occurs when federal regulation in a legislative field is so pervasive that we can reasonably infer that Congress left no room for the states to supplement it–this is known as "field preemption" or "occupying the field."  English v. General Elec. Co., 496 U.S. 72, 79, 110 S. Ct. 2270, 2275, 110 L. Ed. 2d 65 (1990).  And even if Congress

13

has neither expressly preempted state law nor occupied the field, state law is preempted when it actually conflicts with federal law. "Conflict preemption," as it is commonly known, arises in two circumstances: when it is impossible to comply with both federal and state law and when state law stands as an obstacle to achieving the objectives of the federal law. Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372-73, 120 S. Ct. 2288, 2294, 147 L. Ed. 2d 352 (2000).

Cliff v. Payco Gen. Am. Credits, Inc., 363 F.3d 1113, 1122 (11th Cir. 2004).

Federal regulations are an important part of the preemption claims in the present case, and thus, we must keep in mind that

[f]ederal regulations have no less pre-emptive effect than federal statutes. . . . When the administrator promulgates regulations intended to pre-empt state law, the court's inquiry is . . . limited: "If [h]is choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned."

Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153-54, 102 S. Ct. 3014, 3022-23 (1982) (quoting United States v. Shimer, 367 U.S. 374, 383, 81 S. Ct. 1554, 1560 (1961)). The ability of an administrative agency to preempt state law does not depend on express congressional authorization to displace state law. The proper inquiry is whether the administrative agency intended to preempt

14

state law, and if so, whether the preemption was within the scope of the authority delegated by Congress.  Id. at 154, 102 S. Ct. at 3023.  Therefore, in looking at the preemptive effect of any of the pertinent federal regulations in the present case, the proper inquiry is 1) whether the FAA regulations preempt the Florida statutes in question here, and, if so, 2) whether that action is within the scope of the FAA's authority.

The district court found both express preemption and field preemption in the present case, concluding that preemption was readily apparent, and enjoining the state court proceedings.[11]  Hughes, 274 F. Supp. 2d at 1343-44, 1346.  We disagree.  While it is necessary to discuss the particular legal standards governing a preemption analysis, we emphasize that we need not, and do not, resolve the merits of the preemption claims.  If upon a review of the preemption claims in question we determine that the claims are not facially conclusive, we need go no further, and should abstain from hearing the claim.  As explained below, because the preemption claims put forth by appellees are not facially conclusive, the

---

[11] Neither party seriously contends that conflict preemption is at issue in the present case. Appellees' brief does suggest that 18 U.S.C. §§ 341-43 directly conflict with the Florida criminal statutes at issue.  However, appellees admitted at oral argument that the pilots could comply with both the Florida criminal statutes and §§ 341-43 without any problem.  Moreover, the state statutes here, criminalizing the operation of commercial airlines while intoxicated, do not stand as an obstacle to the purpose of 18 U.S.C. §§ 341-43 or the federal regulatory scheme, and certainly not in a "facially conclusive" manner.  See Crosby, 530 U.S. at 372-73, 120 S. Ct. at 2294.  As such, the remainder of our focus will be on the other two types of preemption.

district court should have abstained from deciding the preemption claims at this time.

B.    Field Preemption

The district court determined that Congress and the FAA have preempted the field of law governing the qualifications and capacity of pilots who operate commercial aircraft in interstate commerce, such that the challenged Florida criminal statutes are preempted. Hughes, 274 F. Supp. 2d at 1343-44. The district court, in reaching its conclusion that field preemption was "readily apparent," defined the field of preemption: "qualifications and capacity to pilot regularly scheduled commercial flights in interstate commerce where there are no actual fatalities or injuries to persons or property." Id. at 1342. The district court cited various regulations promulgated by the FAA in the area of commercial pilot qualifications such as those covering pilot licensing, pilot medical requirements, pilot conduct, operating requirements, and regulations governing the misuse of alcohol while on duty. Id. at 1342-43. The district court also cited the promulgation of federal criminal statutes by Congress making it a crime to pilot a commercial aircraft while intoxicated.[12] Id. at 1343. In light of these regulations and statutes, the district court determined it was "readily apparent" that Congress

_____

[12]18 U.S.C. §§ 341-343.

16

intended to preempt the field of pilot qualifications and capacity to fly a commercial airliner in interstate commerce.  Id. at 1344.  The district court supported its conclusion by citing French v. Pan Am Express, Inc., 869 F.2d 1 (1st Cir. 1989), and Abdullah v. American Airlines, Inc., 181 F.3d 363 (3d Cir. 1999).

As noted above, field preemption occurs when federal regulation in a field is so pervasive that we can reasonably infer that there is no room left for the states to supplement it.  Cliff, 363 F.3d at 1122.  However, the Supreme Court has stated that we should not infer field preemption "simply because the agency's regulations are comprehensive."  R.J. Reynolds Tobacco Co. v. Durham County, 479 U.S. 130, 149, 107 S. Ct. 499, 511 (1986) (noting in that case that, while detailed, the federal regulations appeared to contemplate some concurrent state regulation).

Any argument that field preemption in the present case is facially conclusive is severely undercut by 14 C.F.R. § 91.17.  The district court cited multiple regulations enacted by the FAA as support for the court's determination that it was "readily apparent" the FAA had occupied the field of regulation of pilot safety and qualifications.  Hughes, 274 F. Supp. 2d at 1342-43.  However, the district court failed to devote sufficient attention to 14 C.F.R. § 91.17(c).  The text of § 91.17(c) provides in pertinent part that,

(c) A crewmember shall do the following:

17

(1) On request of a law enforcement officer, submit to a test to indicate the percentage by weight of alcohol in the blood, when–
(i) The law enforcement officer is authorized under State or local law to conduct the test or to have the test conducted; and
(ii) The law enforcement officer is requesting submission to the test to investigate a suspected violation of State or local law governing the same or substantially similar conduct prohibited by paragraph (a)(1), (a)(2), or (a)(4) of this section.

14 C.F.R. § 91.17(c).  The text of § 91.17(c) would seem to contemplate the enforcement of state laws regarding the type of conduct outlined in subsections (a)(1), (a)(2), and (a)(4) of § 91.17, which provide,

(a) No person may act or attempt to act as a crewmember of a civil aircraft--
(1) Within 8 hours after the consumption of any alcoholic beverage;
(2) While under the influence of alcohol;
. . .; or
(4) While having .04 percent by weight or more alcohol in the blood.

14 C.F.R. § 91.17(a).  Thus, the text of § 91.17 seems to contemplate the operation of state laws making the piloting of an airplane while intoxicated illegal.  Such an explicit statement of contemplation, at a minimum, makes it more difficult to make the inference that there is no room left for the states to supplement this field, an inference required for field preemption.  See R.J. Reynolds Tobacco Co., 479 U.S.

18

at 149, 107 S. Ct. at 511.

Appellees contend that § 91.17(c) was promulgated to allow state law enforcement agencies to assist federal aviation officials in conducting breathalyser tests, relying upon § 91.17(e). Although § 91.17(e) does authorize the FAA to use tests administered by state authorities pursuant to § 91.17(c), we doubt that paragraph (e) can plausibly be read to limit paragraph (c) as appellees urge. The plain language of paragraph (c) contemplates such tests by state law enforcement officers "to investigate a suspected violation of State or local law governing the same or substantially similar conduct prohibited by paragraph (a)(1), (a)(2), or (a)(4)." We conclude that § 91.17(c) severely undercuts appellees' argument that the challenged Florida criminal statutes are preempted.

Further undercutting any argument that the pervasiveness of the FAA regulations suggests field preemption that would encompass the instant Florida statutes is the existence of § I(E) of Appendix J to Part 121 of Title 14 of the regulations.[13] Appendix J, governs alcohol misuse prevention programs, and its

---

[13] The text of § I(E) of Appendix J, entitled "Preemption of State and local laws," provides that,

> 1. Except as provided in subparagraph 2 of this paragraph, these regulations preempt any State or local law, rule, regulation, or order to the extent that:
> (a) Compliance with both the State or local requirement and this appendix is not possible; or
> (b) Compliance with the State or local requirement is an

19

relevant provision uses the well established language of conflict preemption. Thus, Appendix J arguably contemplates that only state regulation concerning alcohol misuse that conflicts with the specific guidelines of Appendix J would be preempted. This limited preemption statement suggests that the FAA contemplated that states would also want to regulate alcohol misuse and chose to narrowly preempt only a subset of those possible state regulations. Again, the FAA has apparently left room for state supplementation in the realm of alcohol use and misuse, making it very difficult for us to conclude that appellees' field preemption claim is facially conclusive.

Appellees cite a FAA Legal Opinion Letter to support their claim that we should still infer field preemption in the present case, despite the above analysis. The FAA Legal Opinion Letter, dated October 15, 2002, states in pertinent part that qualifications of persons "operating aircraft are determined by federal rules and not subject to standards varying from state to state." The Supreme Court has

obstacle to the accomplishment and execution of any requirement in this appendix.
2. The alcohol misuse requirements of this title shall not be construed to preempt provisions of State criminal law that impose sanctions for reckless conduct leading to actual loss of life, injury, or damage to property, whether the provisions apply specifically to transportation employees or employers or to the general public.

14 C.F.R. pt. 121, App. J, § I(E).

20

noted that while views of an administrative agency on preemption are not dispositive, their own views should be taken into account when determining whether implied preemption exists. See Geier v. Am. Honda Motor Co., 529 U.S. 861, 883-84, 120 S. Ct. 1913, 1926-27 (2000). However, this 2002 Opinion Letter carries little weight in the present case. First, the letter was a response to an inquiry regarding state regulation of flight schools, flight instructors, and other standards for flight training. That sort of interference by the states is very different from the type of statutes in the present case, which have nothing to do with obtaining pilot licenses or other qualifications a pilot must meet before training to become a pilot. Further, the opinion expressed in that letter is explicitly based on the First Circuit's opinion in French, 869 F.2d 1, which as explained below is of little precedential value in the present case. Finally, it seems illogical to extend the rationale of an opinion letter to a situation so different from that to which it is addressed, to the exclusion of a regulation promulgated by the same administrative agency that seems to contemplate the precise kind of state regulation at issue in the present case.

Support militating against a finding of facially conclusive field preemption is also found in a recent congressional enactment. In 1994, Congress passed 49 U.S.C. § 45106, which states in part:

21

(a) Effect on State and local government laws, regulations, standards, or orders.–A State or local government may not prescribe, issue, or continue in effect a law, regulation, standard, or order that is inconsistent with regulations prescribed under this chapter. However, a regulation prescribed under this chapter does not preempt a State criminal law that imposes sanctions for reckless conduct leading to loss of life, injury, or damage to property.

49 U.S.C. § 45106(a). The first sentence of this statute undercuts the position that the entire field of pilot qualifications and capacity has been preempted, because Congress limited its explicit statement of preemption to state regulation in this field that is inconsistent with the federal regulations. And, the state statutes at issue here are consistent with the federal regulations, and therefore do not fall under the express preemption provision cited in § 45106(a).

We acknowledge appellees' argument that a negative pregnant could be inferred from the statute's second sentence, inferring that criminal laws regulating reckless conduct are preempted when the conduct does not lead to loss of life, injury, or damage to property. Because of this second sentence of the statute, it may well be more difficult to conclude that § 45106(a) unambiguously provides for only conflict preemption. The circumstance may be one in which the negative pregnants of the two sentences of the statute are simply in tension. Such a circumstance of equipoise, however, would actually support our holding today that

22

field preemption encompassing the Florida statutes challenged here is not facially conclusive.[14] Moreover, there is at least a plausible interpretation of § 45106(a) which favors only conflict preemption. First, the negative pregnant of the first sentence – that Congress intended only conflict preemption – appears in the sentence which contains the explicit preemption provision, whereas the second sentence can plausibly be interpreted as merely elaboration or explanation. Second, the second sentence of the statute can plausibly be interpreted, not as a limitation upon the first sentence, but rather as a mere explanation that Congress did not intend that the Federal Aviation Act or its regulations would be inconsistent with state laws imposing sanctions for reckless conduct leading to loss of life, injury, or damage to property.[15] Indeed, it would make no sense to read the second sentence as a limitation upon the first sentence, because any state law actually inconsistent with any federal law would be unenforceable under the

---

[14] Compare Ishikawa v. Delta Airlines, Inc., 343 F.3d 1129, reh'g denied and amended by, 350 F.3d 915 (9th Cir. 2003) (holding that because the first sentence of § 45106(a) expressly limited the preemptive effect to "inconsistent" state regulation, it would not infer a negative pregnant from the second sentence of subsection (a) that laws other than the specific state criminal laws described would be preempted), with Frank v. Delta Airlines, Inc., 314 F.3d 195, 199 (5th Cir. 2002) (holding that the narrow scope of the savings clause found in the second sentence of subsection (a) implied a broad scope of preemption for subsection (a), because, the court concluded, the second sentence "would hardly have seemed necessary if state law were only narrowly preempted").

[15] This interpretation might suggest a limitation on the FAA's authority to promulgate regulations providing for any preemption broader than conflict preemption, an issue we need not address in this case.

23

Supremacy Clause; thus, it is doubtful that the second sentence of § 45106(a) means that state criminal laws imposing sanctions for reckless conduct leading to loss of life, injury, or damage to property can operate free of any preemption, even if such state laws are inconsistent with federal law. For these reasons, we conclude that § 45106(a) provides additional support for our holding today that there is no facially conclusive preemption of an entire field that would encompass the Florida criminal statutes challenged here.

Appellees rely upon French, 869 F.2d 1, and Abdullah, 181 F.3d 363. In French, the airline had fired a pilot for refusing to take a urine test which the airline ordered upon being tipped off by local police of off duty use of marijuana by the pilot. The pilot sued, relying upon a Rhode Island statute requiring such a test to be based upon reasonable grounds to believe drug use is impairing the ability to perform his job. The First Circuit held that the Federal Aviation Act and the regulations promulgated thereunder occupied the field of pilot qualification, thus preempting the state statute. Although there is broad language in the opinion of the First Circuit, the holding of the case is not inconsistent with our opinion. Preemption of a state law regulating who is qualified to remain employed as a pilot, or the grounds for discharging a pilot, is very different from the state regulation here which says nothing about who may remain employed by an airline,

24

but rather imposes criminal responsibility for actions of a pilot which are also inconsistent with federal regulations. There is a great need for uniformity in the former circumstance. In contrast, it is not at all clear that the state action at issue here encroaches upon any need for uniformity. Moreover, the French opinion is distinguished in that it was issued on February 23, 1989, before the enactment of 14 C.F.R. § 91.17, which was promulgated on August 18, 1989, with an effective date August 18, 1990, see 54 Fed. Reg. 34284, 34293 (Aug. 18, 1989), and also before the 1994 enactment of 49 U.S.C. § 45106(a). As discussed above, the subsequently enacted statute and regulation both undercut any argument that Congress and the FAA intended to preempt the field so as to prohibit states from enacting criminal statutes such as those in the present case and enforcing them against commercial airline pilots. French relied upon the FAA regulations in the general area of pilots and air safety, 869 F.2d at 4, and upon an intricate web of statutory provisions, id. at 3-4, as supporting the conclusion that the field had been preempted. However, the First Circuit pointed to no regulations or statutes suggesting an absence of preemption. By contrast in this case, 49 U.S.C. § 45106(a), as well as § 91.17(c) and Appendix J to Part 121 of the regulations suggest a lack of preemption. For these reasons, we conclude that the French opinion has little persuasive value in this case which involves a different

25

preemption issue, and a facially conclusive standard as to preemption.

Appellees also rely upon Abdullah, 181 F.3d 363. That case involved injuries to passengers sustained during an American Airlines flight when turbulent weather conditions were encountered. The issue was whether federal law preempted the state standard of care for air safety. The Third Circuit held that the standard of care was federal, preempting the state standard, but that state damage remedies were not preempted. Although Abdullah states broadly that "the entire field of aviation safety is federally preempted," id. at 375, for several reasons we do not believe that Abdullah indicates that it is facially conclusive that the state criminal responsibility that would be imposed in the instant case is preempted. First, although the Abdullah opinion was issued after the enactment of 49 U.S.C. § 45106(a), it did not cite or discuss its significance. We have noted above that this statute arguably undermines the position that the entire relevant field has been preempted, thus supporting our conclusion that preemption in the instant case is not facially conclusive. Second, with respect to the issue in the instant case, there are concrete indications in the federal regulations which suggest that a state's enforcement of its laws relating to alcohol misuse may not be preempted if they are not inconsistent with the federal regulations. See 14 C.F.R. § 91.17; 14 C.F.R. pt. 121, App. J, § I(E). Third, Abdullah held that state remedies were not

preempted even though the entire field of aviation safety was preempted. Relying on <u>Silkwood v. Kerr-McGee Corp.</u>, 464 U.S. 238, 104 S. Ct. 615 (1984), the court acknowledged that state law damage remedies were inherently regulatory, but held that Congress had decided to tolerate that tension. 181 F.3d at 375-76. It is not absolutely clear to us, i.e., facially conclusive, that Florida's law with respect to criminal responsibility does not bear some similarity to the state damage remedy which was permitted in <u>Abdullah</u>, and as noted, there are concrete indications in the federal regulations suggesting toleration of such tension in the instant context. Finally, even if <u>Abdullah</u> were inconsistent with an absence of preemption in the circumstances here, <u>Abdullah</u> itself acknowledges considerable contrary authority. <u>See</u> 181 F.3d 372-75. We cannot conclude that the legal landscape and circumstances here render preemption facially conclusive.

In sum, while Congress and the FAA have enacted many statutes and regulations, respectively, governing pilot qualifications and safety, field preemption is based on the inference that the entire field has been occupied, leaving no room for state supplementation.[16] As the discussion above explains, there are indications in congressional statutes and in the FAA's regulations that it

---

[16] Field preemption, if applicable, does not depend on whether state supplementation is consistent or inconsistent – field preemption prohibits state supplementation in any form. <u>See</u> <u>Cliff</u>, 363 F.3d at 1122.

was contemplated that state statutes would operate affecting the precise conduct at issue in this case. Therefore, we cannot say it is facially conclusive that appellees are entitled to the inference that there was no room left for state supplementation of the relevant field in the instant case. With respect to appellees' field preemption claim, the district court should have abstained from hearing appellees' claims at this time.

C.    Express Preemption

The district court also concluded that express preemption of the relevant Florida criminal statutes was readily apparent. This conclusion, if upheld, would, by itself, provide sufficient basis for the district court to hear appellees' claims despite our conclusion concerning field preemption. The district court first determined that Congress had granted authority for the FAA to regulate in the area of pilot qualification and safety in interstate commerce. The district court then determined that the FAA had used this authority intending to preempt the state laws at issue in the present case. There are, however, several problems with the district court's analysis.

We will first address the district court's conclusion that it is readily apparent that the FAA intended to expressly preempt the Florida statutes at issue. Appellees rely on 14 C.F.R. pt. 121, App. I, which provides in pertinent part as

28

follows:

> This appendix contains the standards and components that must be included in an antidrug program required by this chapter.
>
> I. General
>
> A. Purpose. The purpose of this appendix is to establish a program designed to help prevent accidents and injuries resulting from the use of prohibited drugs by employees who perform safety-sensitive functions.
>
> . . .
>
> XI. Preemption. A. The issuance of 14 CFR parts 65, 121, and 135 by the FAA preempts any state or local law, rule, regulation, order, or standard covering the subject matter of 14 CFR parts 65, 121, and 135, including but not limited to, drug testing of aviation personnel performing safety-sensitive functions.
>
> B. The issuance of 14 CFR parts 65, 121, and 135 does not preempt provisions of state criminal law that impose sanctions for reckless conduct of an individual that leads to actual loss of life, injury, or damage to property whether such provisions apply specifically to aviation employees or generally to the public.

Appellees claim that the express statement of preemption in § XI(A) of Appendix I to Part 121 preempts the state criminal statutes at issue.[17] Appellees' argument, with which the district court agreed, is that 14 C.F.R. § 121.458[18] makes alcohol

---

[17] We acknowledge that the savings clause in § XI(B) does not apply in the present case because there are no facts present in the instant case indicating a loss of life, injury, or damage to property.

[18] 14 C.F.R. § 121.458, entitled "Misuse of alcohol," provides as follows:

> (a) General. This section applies to employees who

perform a function listed in appendix J to this part for a certificate holder (covered employees). For the purpose of this section, a person who meets the definition of covered employee in appendix J is considered to be performing the function for the certificate holder.

(b) *Alcohol concentration.* No covered employee shall report for duty or remain on duty requiring the performance of safety-sensitive functions while having an alcohol concentration of 0.04 or greater. No certificate holder having actual knowledge that an employee has an alcohol concentration of 0.04 or greater shall permit the employee to perform or continue to perform safety-sensitive functions.

(c) *On-duty use.* No covered employee shall use alcohol while performing safety-sensitive functions. No certificate holder having actual knowledge that a covered employee is using alcohol while performing safety-sensitive functions shall permit the employee to perform or continue to perform safety-sensitive functions.

(d) *Pre-duty use.* (1) No covered employee shall perform flight crewmember or flight attendant duties within 8 hours after using alcohol. No certificate holder having actual knowledge that such an employee has used alcohol within 8 hours shall permit the employee to perform or continue to perform the specified duties.

(2) No covered employee shall perform safety-sensitive duties other than those specified in paragraph (d)(1) of this section within 4 hours after using alcohol. No certificate holder having actual knowledge that such an employee has used alcohol within 4 hours shall permit the employee to perform or continue to perform safety-sensitive functions.

(e) *Use following an accident.* No covered employee who has actual knowledge of an accident involving an aircraft for which he or she performed a safety-sensitive function at or near the time of the accident shall use alcohol for 8 hours following the accident, unless he or she has been given a post-accident test under appendix J of this part, or the employer has determined that the employee's performance could not have contributed to the accident.

(f) *Refusal to submit to a required alcohol test.* No covered employee shall refuse to submit to a post-accident, random, reasonable suspicion, or follow-up alcohol test required under appendix J to this part. No certificate holder shall permit an employee who refuses to submit to such a test to perform or continue to perform safety-sensitive functions.

abuse a "subject matter" that comes under the rubric of §XI(A) of Appendix I to Part 121, and thus, that any state law endeavoring to regulate alcohol use, or, more specifically, misuse, such as the Florida statutes challenged here, should be preempted when they do not criminally sanction reckless behavior resulting in loss of life, injury, or damage to property.

For several reasons, we conclude that Appendix I to Part 121, does not constitute a facially conclusive preemption of the Florida criminal statutes challenged here. First, it is not absolutely clear that the challenged Florida statutes cover the same "subject matter of 14 C.F.R. Parts 65, 121, and 135." Those Parts deal with certification and operating requirements of various designated airline employees. The only example of such "subject matter" given in the preemption language relied upon by appellees specifies drug testing, which is clearly a requirement imposed upon airline employees. It is at least arguable, however, that the criminal responsibility imposed by the Florida statutes is very different; to the extent that the Florida statutes do involve a regulation of conduct, it is a more indirect regulation than most of the requirements in the federal regulations (for example in Part 121, including drug testing). This ambiguity with respect to the "subject matter" scope of the preemptive language of § XI of Appendix I adds

31

some support for the view that the preemption in this case is not facially conclusive.

Second, and even more significant, the FAA has promulgated several other regulations which are in substantial tension with appellees' interpretation of § XI of Appendix I.[19] We have already mentioned two such regulations, to which we now turn again:

(a) As noted above, 14 C.F.R. § 91.17(c) contemplates that state law enforcement officers will investigate suspected violations of state and local laws sanctioning airline crew members acting under the influence of alcohol or while having .04 percent by weight or more of alcohol in the blood. There is an obvious tension between this regulation and appellees' position that Appendix I to Part 121 constitutes an absolute preemption of such state and local laws, even ones which are consistent with the federal regulations. This tension provides strong support for our conclusion that it is not facially conclusive that § XI of Appendix I preempts the Florida statutes challenged here.

(b) Appendix J to Part 121 is also in tension with appellees' interpretation

---

[19] See also Ishikawa v. Delta Airlines, Inc., 343 F.3d 1129, 1133, reh'g denied and amended by, 350 F.3d 915 (9th Cir. 2003), where the Ninth Circuit noted the broad language of preemption in Appendix I, but read Appendix I narrowly because of other regulations which suggested that the common law negligence claim at issue there would not be preempted.

of § XI of Appendix I. Appendix J, labeled "Alcohol Misuse Prevention Program," focuses specifically on the standards for the federally authorized alcohol misuse program. It provides in pertinent part:

> I. General.
>     A. Purpose. The purpose of this appendix is to establish programs designed to help prevent accidents and injuries resulting from the misuse of alcohol by employees who perform safety-sensitive functions in aviation.
>     . . .
>
>     E. Preemption of State and local laws.
>     1. Except as provided in subparagraph 2 of this paragraph, these regulations preempt any State or local law, rule, regulation, or order to the extent that:
>     (a) Compliance with both the State or local requirement and this appendix is not possible; or
>     (b) Compliance with the State or local requirement is an obstacle to the accomplishment and execution of any requirement in this appendix.
>     2. The alcohol misuse requirements of this title shall not be construed to preempt provisions of State criminal law that impose sanctions for reckless conduct leading to actual loss of life, injury, or damage to property, whether the provisions apply specifically to transportation employees or employers or to the general public.

14 C.F.R. pt. 121, App. J.

Appendix J to Part 121 sets out a much narrower range of preemption than the preemption provision in Appendix I to Part 121. Appendix J uses the well-

established language of conflict preemption, and thus preempts only state or local laws that are inconsistent with federal regulations. This more limited preemption is in tension with the broad preemption which appellees would have us attribute to § XI of Appendix I. In this case, we need only decide that there is no facially conclusive preemption. Therefore, we need not definitively resolve the tension between Appendix I and Appendix J. However, we do note that Appendix J, employing only the conflict preemption standard, applies specifically to alcohol misuse prevention programs, whereas Appendix I applies to drug testing programs.[20]

For these reasons, we cannot conclude that § XI of Appendix I to Part 121 constitutes a facially conclusive express preemption which encompasses the Florida criminal statutes challenged in this case.[21] In light of this conclusion, it is

---

[20] We also note that 14 C.F.R. §121.458, the regulation relied upon by appellees in their argument for express preemption under Appendix I, makes repeated reference to Appendix J in its text. Nowhere does it refer to Appendix I.

[21] The Ninth and the Fifth Circuits also addressed the preemptive effect of § XI(A) of Appendix I to Part121 of the regulations in Ishikawa, 343 F.3d at 1133, and Frank, 314 F.3d at 198-202, respectively. The Ninth Circuit rejected the invitation to read the preemptive language of Appendix I broadly, relying in part upon the conflicting indications in 49 U.S.C. § 45106(a) and other provisions of the federal regulations. 343 F.3d at 1133. In contrast, the Fifth Circuit in Frank read the preemptive language broadly in both 49 U.S.C. § 45106(a) and in Appendix I. 314 F.3d at 198-202. Although the two cases both involve drug testing, and thus involve a somewhat different preemption issue than in this case, their conflicting interpretations of § 45106(a) and Appendix I provides further support for our holding that those provisions do not constitute a "facially conclusive" preemption of Florida's laws imposing criminal responsibility for appellees' alcohol abuse in this case.

34

not necessary for us to address whether or not, if the FAA had intended such preemption, such action would have been within the scope of authority granted by Congress. See 49 U.S.C. § 45106(a) (providing for conflict preemption); 49 U.S.C. §44701(a) (authorizing the FAA to promote safe flight in air commerce by prescribing minimum standards).

## V. CONCLUSION

For the foregoing reasons, we conclude that neither appellees' express preemption claim nor their field preemption claim is facially conclusive. Accordingly, the district court should have abstained from deciding appellees' pre-trial habeas petition. The order of the district court granting habeas relief to appellees is reversed, and this case is remanded to the district court with instructions to abstain.

REVERSED and REMANDED.