[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12716
Non-Argument Calendar

_____

D.C. Docket No. 0:20-cv-60677-BB

PETER DAVIS,

Plaintiff-Appellant,

versus

SHERIFF TONY GREGORY,
BROWARD SHERIFF'S OFFICE,
CAPTAIN J. ACOSTA,
LT. Y. WILLIAMS,
DEPARTMENT OF HOMELAND SECURITY (DHS),
IMMIGRATION AND NATURALIZATION SERVICES, ICE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 14, 2021)

Before MARTIN, BRANCH and MARCUS, Circuit Judges.

PER CURIAM:

Peter Davis, proceeding pro se, appeals from the final order of the district court, which relied on the doctrine of abstention established by Younger v. Harris, 401 U.S. 37 (1971), to dismiss his amended § 1983 complaint. Davis argues that the district court abused its discretion by abstaining under Younger because he has no adequate alternative state forum in which to raise his constitutional claims, he has been deprived of his right to be free pending resolution of his state case and is suffering irreparable injury, and he did not ask the district court to interfere with his state case. After careful review, we vacate and remand for further proceedings.

We review a district court's decision to apply Younger abstention for abuse of discretion. 31 Foster Children v. Bush, 329 F.3d 1255, 1274 (11th Cir. 2003). Younger abstention is not jurisdictional. Walker v. City of Calhoun, Ga., 901 F.3d 1245, 1254 (11th Cir. 2018). A district court abuses its discretion when it applies an incorrect legal standard or applies the law in an unreasonable or incorrect manner. In re Hubbard, 803 F.3d 1298, 1307 (11th Cir. 2015). We construe pleadings by pro se litigants liberally. Dixon v. Hodges, 887 F.3d 1235, 1237 (11th Cir. 2018).

In Younger, the Supreme Court held that a federal court should not act to restrain an ongoing state court criminal prosecution. 401 U.S. at 41. Younger abstention applies to claims for injunctive relief, as well as to claims for declaratory judgment that would effectively enjoin state proceedings. Old Republic Union Ins. Co. v. Tillis Trucking Co., 124 F.3d 1258, 1261 (11th Cir. 1997). For Younger

2

abstention to apply, state judicial proceedings must be ongoing and the relief sought by the plaintiff must interfere with the state proceeding, the proceedings must implicate important state interests, and the federal plaintiff must have an adequate opportunity to raise constitutional challenges in the state proceedings. 31 Foster Children, 329 F.3d at 1274, 1275–76. To determine whether a proceeding is ongoing, we look to the date the federal complaint is filed. Liedel v. Juv. Ct. of Madison Cty., Ala., 891 F.2d 1542, 1546 n.6 (11th Cir. 1990).

For the first factor, Younger abstention is not triggered unless the federal relief would create an undue interference with state proceedings and the state proceedings at issue involve orders that uniquely further the state courts' ability to perform their judicial functions. Wexler v. Lepore, 385 F.3d 1336, 1339 (11th Cir. 2004). A plaintiff's requested relief may unduly interfere with the state proceeding if it would disrupt the normal course of action in the state proceeding, even if the relief sought would not terminate an ongoing proceeding. 31 Foster Children, 329 F.3d at 1276. Whether the federal proceeding would interfere with the state proceeding turns on the relief requested and the effect it would have on the state proceeding. Id.

In Walker, we upheld a district court's refusal to abstain under Younger where the defendant's request for "a prompt pretrial determination of a distinct issue" -- related to a municipal policy that required persons charged with certain misdemeanors to be detained unless they paid a fixed cash bond -- would not

3

interfere with subsequent prosecution. 901 F.3d at 1255. Likewise, the Supreme Court approved of a district court's refusal to abstain under Younger where the requested injunction was directed only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution. Gerstein v. Pugh, 420 U.S. 103, 108 n.9 (1975). And, in Wexler, we held that the district court had abused its discretion by abstaining under Younger in a federal challenge to the method of recounting electoral votes in several Florida counties, because the court had failed to determine whether granting the requested relief would have caused an undue interference with state proceedings. 385 F.3d at 1341 ("[W]ithout showing an undue interference on state proceedings, abstention is not permitted."). We noted that the existence of a parallel state court action would not warrant abstention in federal court unless the requested relief would result in significant federal oversight of state court or court-like functions. Id. at 1340.

Federal courts have recognized that Younger's limitation on enjoining pending state criminal prosecutions has a few exceptions, where: (1) there is evidence of state proceedings motivated by bad faith; (2) irreparable injury would occur; or (3) there is no adequate alternative state forum where the constitutional issues can be raised. Hughes v. Att'y Gen. of Fla., 377 F.3d 1258, 1263 n.6 (11th Cir. 2004). Irreparable injury may be demonstrated upon a showing of "bad faith" or "harassment" by state officials responsible for the prosecution, or of a state law

4

to be applied in criminal proceedings that flagrantly and patently violates express constitutional prohibitions, or of other extraordinary circumstances resulting in irreparable injury, even without bad faith or harassment. Id. at 1263 n.7. "Extraordinary circumstances" encompasses, but is not limited to, situations where a statute flagrantly and patently violates express constitutional prohibitions or where the state decisionmaker was too biased to adjudicate the issues before it. See id.

A person's detainment after posting bond implicates the Fourth Amendment right to be free from unreasonable seizures as well as the Fourteenth Amendment due-process right to be free from continued detention after law enforcement should have known the detainee was entitled to release. Alcocer v. Mills, 906 F.3d 944, 952 (11th Cir. 2018). In Alcocer, we held that a claim of continued detention in a county jail after posting bond, based on an alleged detainer by U.S. Immigration and Customs Enforcement ("ICE"), involved the Fourth Amendment right to be free from unreasonable seizures -- instead of the Fourteenth Amendment due-process right -- because it offered an explicit textual source of constitutional protection for the violation alleged. Id. at 952, 955. The length of the contested continued detention in Alcocer was about one day. Id. at 950. Notably, the regulations provide that "[u]pon a determination by the Department [of Homeland Security] to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding

5

Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department." 8 C.F.R. § 287.7(d). The 48-hour period begins when an individual who is the subject of an immigration detainer would not otherwise be detained (i.e., he has posted bond), and a detainer does not prevent a state court from allowing an individual out on bond, as long as ICE is allowed 48 hours to opt to take the individual into custody. See id.

Here, Davis's federal complaint alleges that he has been unconstitutionally detained by the state court in violation of the Fourth Amendment since 2017. According to Davis, he was arrested on September 15, 2017, by the Hallandale Beach Police Department, a division of the Broward County Sheriff's Office ("BSO"), charged with felony offenses, and transported to Broward County's main jail. The state court docket concerning Davis's criminal charges reveals that he was charged with two counts of sexual battery on a person who was at least 12 years old but not yet 18 years old.[1] He also was charged with two counts of lewd/lascivious battery involving a person at least 12 years old but less than 16 years old and one count of attempted lewd/lascivious battery. It appears that the counts involving lewd/lascivious battery and attempted lewd/lascivious battery are the only ones currently being prosecuted, although it is unclear.

---

[1] We, like the district court, take judicial notice of the Broward County Circuit Court's online docket, which can be found at https://browardclerk.org/Web2. See Fed. R. Evid. 201.

Davis alleges that around September 20, 2017, he went before a magistrate judge, who set bond on his charges, and he was released on bond on September 21. The state court docket confirms that Davis posted bond on September 21, 2017. Then, according to the docket, at a status hearing on October 23, 2017, Davis was remanded into custody, pursuant to a state court order that remanded him and reset the bond to the previous amount he had already paid. Neither the state court docket nor Davis's complaint explains what changes the state court made to Davis's bond or why. Davis alleges that when he learned at the hearing that he was being remanded into custody, he and his lawyer spoke to the bond company, which was willing to prepare an affidavit so Davis could remain released on bond.

However, says Davis, he called his bondsman a few days later about the status of his bond and learned that the BSO was reporting an immigration detainer on his jail roster. The bondsman told Davis that he could not be released on bond anymore because of the immigration detainer and that no bond companies would do business with him. He was transferred to a BSO detention facility and was still there at the time of the filing of his amended complaint.

The state court docket next reflects that on June 14, 2018, the state court issued an order providing that the bond that had been discharged in September 2017 had been "done in error" and reinstating Davis's bond. Davis alleges that despite this order, the bond companies told him that writing a bond would be futile because he

7

would not be released immediately or at all, in light of the immigration detainer and BSO policy and practice. Davis claims that his requests for documents about the detainer were denied, and in September 2019, when he asked the BSO to remove the hold, the BSO responded that it could not, so he was still being held without possibility of release on bond. Nothing on the docket indicates why Davis has not been able to post the reinstated bond since June 2018, nor why he is still being detained. We also observe that Davis has been represented by counsel throughout the state court proceedings.

On this record, the district court found correctly that there were ongoing state criminal proceedings -- Davis filed his initial federal complaint in March 2020 and his state case, which began around 2017, was and is pending. The district court also properly found that Davis's challenge of detention procedures implicated important state interests. And on reconsideration, the district court made an additional finding -- that "were it to interfere in the manner Plaintiff requests, by declaring that Plaintiff's continued detention violates his rights under the United States Constitution and Florida law, granting a permanent injunction enjoining the Broward Sherriff's Office from 'seizing, detaining, arresting or reporting/placing ICE/DHS holds on Plaintiff's jail roster without criminal probable cause,' . . . and ordering Plaintiff's immediate release, among other actions, . . . it would violate the Younger abstention doctrine."

8

Significantly, however, there is no indication that the district court found that granting the requested relief would cause <u>undue</u> interference with the state proceeding, a finding that is required for abstention. <u>Wexler</u>, 385 F.3d at 1339 (vacating and remanding where the district court found that the federal action "would interfere with the ongoing state action," but legally erred by not determining whether the federal action would create "an <u>undue</u> interference on state proceedings"). And, moreover, we are unable to tell on the record before us whether the federal proceeding would unduly interfere with the state proceeding. Davis's allegations and the entries on the state court docket generally indicate that Davis posted bond and that, thereafter, it was discharged, cancelled, and reinstated to the same amount he had already posted. But they do not make clear why Davis is still being detained, if he has an immigration detainer in place under 8 C.F.R. § 287.7(d), if an immigration detainer is the reason he is still in state custody, if there are issues with his bond that are closely related to the state proceedings, or what venue he has to challenge the bond issues in state court, all of which makes us unable to address whether his federal case would unduly interfere with the state proceedings.[2]

---

[2] The district court said in its original order that based on Davis's allegations, "his continued detention arises from the immigration hold placed upon him due to the charges he faces in state court." Then, on reconsideration, the court said that it "did not find Plaintiff's immigration hold is related to Plaintiff's state criminal charges" and that "[t]he state court is capable of considering Plaintiff's constitutional claims, including whether continued detention by the state court pursuant to an 'immigration hold' violates Plaintiff's Fourth Amendment rights." To date, we remain uncertain what connection, if any, there is between the state case and any alleged immigration detainer, and observe that resolving this issue may be relevant to addressing on

Moreover, because the defendants were not served with Davis's complaint, which the district court dismissed at the screening stage under 28 U.S.C. §§ 1915(e)(2)(b) and 1915A, the defendants never responded to Davis's allegations, and we have no way of knowing what the state's position is in this delicate matter.

On this incomplete record, and because the district court has not made an undue-interference determination, as required by our law, before it may abstain under Younger, we remand the cause back to the district court to unscramble the necessary facts and to make this necessary determination.  As we held in Wexler, a district court's failure to determine undue interference is sufficient to show that Younger has been improperly applied.  385 F.3d at 1341.  Accordingly, we vacate the district court's order dismissing Davis's amended complaint based on Younger and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**

---

remand whether Davis's requested relief would cause undue interference with the state proceeding.

MARTIN, Circuit Judge, concurring:

I write separately to note why I prefer not to use the term "alien," which the panel opinion quotes twice. Justice Kavanaugh has equated the term "noncitizen" with the statutory term "alien." Nasrallah v. Barr, 590 U.S. __, 140 S. Ct. 1683, 1689 n.2 (2020); see also United States v. Estrada, 969 F.3d 1245, 1253 n.3 (11th Cir. 2020). "Alien" is increasingly recognized as an "archaic and dehumanizing" term. Maria Sacchetti, ICE, CBP to Stop Using 'Illegal Alien' and 'Assimilation' Under New Biden Administration Order, Wash. Post (Apr. 19, 2021), https://www.washingtonpost.com/immigration/illegal-alien-assimilation/2021/04/19/9a2f878e-9ebc-11eb-b7a8-014b14aeb9e4_story.html.

To the extent the term "noncitizen" does not, in every instance, serve as a perfect replacement for the term "alien," that concern is not present in this case. I see no need to use a term that "has become pejorative" where a non-pejorative term works perfectly well. Library of Congress, Library of Congress to Cancel the Subject Heading "Illegal Aliens" at 1 (2016), https://www.loc.gov/catdir/cpso/illegal-aliens-decision.pdf.

11

BRANCH, Circuit Judge, concurring:

In her separate concurrence, Judge Martin takes issue with the fact that the majority uses the statutory term "alien," rather than her preferred term "noncitizen."  "Alien" is the term Congress selected in the Immigration & Nationality Act, and the Supreme Court has confirmed that it remains appropriate for us to use.  *See Jean-Louis v. U.S. Att'y Gen.*, No. 20-12082, 2021 WL 2885838, at \*2 (11th Cir. July 9, 2021) (Branch, J., concurring); *Rivera v. U.S. Att'y Gen.*, No. 20-13201, 2021 WL 2836460, at \*7 (11th Cir. July 8, 2021) (Branch, J., concurring).